## FRINK v. FRINK.

It is the ordinary duty of the clerk of a court of record to extend the record of the proceedings in each suit, from the process and pleadings on file, and from the minutes and entries on the dockets, and he can resort to no extrinsic evidence for that purpose.

But the court has authority to amend its records so as to make them conform to the actual facts and truth of the case; and may in its discretion, receive and act upon any competent legal evidence.

PETITION to amend the record of a judgment in favor of the defendant. The facts appeared to be as follows: Mrs. Olivia Frink, the defendant, is the widow of J. N. Frink, who died without children some ten or twelve years since. J. N. Frink's father, G. Frink, conveyed to him two tracts of land in Newington, reserving to himself and his wife a life estate; J. N. Frink survived his father, but died leaving his mother. After her decease, Mrs. Frink, the defendant, brought her writ of entry against the plaintiff, Darius Frink, for the whole of these tracts of land. At the September term of the court of common pleas, 1854, the case came on for trial, as it was understood, upon the general issue. Upon proof of the foregoing facts, a question arose as to the extent of the plaintiff's

interest, and by consent of parties, a verdict was directed for the plaintiff, for one half of the demanded premises; the presiding judge proposing to reserve and transfer certain questions of law, in case he should find that they had not been decided. He wrote to one of the judges of the supreme court, and learned that it had been decided that the wife, in such a case, was entitled to one half the real estate; and he took no further order, leaving the judgment, provisionally ordered on the verdict, to stand. These facts distinctly appeared from the evidence, and from the original notes of the court and counsel for the defendant. It does not appear from the files of the court, or otherwise, that any plea was in fact filed, or any verdict drawn up or signed. The clerk entered upon his docket, "verdict for the plaintiff," without saying "for half the premises" as he might properly have done, and being subsequently applied to, he issued a writ of possession to Mrs. Frink for the whole of the demanded premises. This writ was not executed, and an alias writ issued, upon which there is a return, dated March, 1856, of possession delivered. These writs were improperly issued by the clerk, without ascertaining that the proper papers were on file to warrant them. And the whole difficulty has grown out of this neglect. In the spring of 1860, the attention of the clerk of the supreme court, to whose office the records of the court of common pleas had been by law transferred, was called to the case by Mr. Smith, who now appears as counsel for the defendant, and upon his own account, as her assignee of this property, who examined the records and files of the term, caused one or both of the writs of possession, which had been in the hands of the defendant's counsel, to be returned to the files, and called upon the clerk for an extended copy of the record. The clerk, who had no personal knowledge of the case, and who had been unable to find either plea or verdict, at the law term in August, 1861, submitted the papers to the chief justice, and asked his advice as to extending the record. The chief justice wrote to him that he could extend the record upon the papers he had, assuming that, under the general rule, the plea must be the general issue, and the docket and writs of execution both showing a general verdict for the plaintiff. It was not suggested that there was any question as to the amount of interest found by the verdict, or any question as to any matter except the manner of extending the record. Under this advice the clerk extended the record, showing a recovery of all the demanded premises, and then for the first time entered upon the docket the issuing of the writs of possession. These things were done without notice to the petitioner, or his counsel. In October following, the extension of the record became known to the petitioner and his counsel; and this petition was filed on the 21st of that month. At the December term following, the defendant appeared, and the parties proceeded to take their proofs. No controversy was made as to the facts thus stated, but Mr. Smith contended, in effect, that he was a *bonâ fide* purchaser without notice of any defect of Mrs. Frink's title as it appeared by the writ of possession of the whole property, and that the amendment of the record could not be made without injustice

to him. To this point he offered his own deposition, by which it appeared that he was the only brother of Mrs. Frink, and lived near her; that in 1859 he advanced money to her to the amount of $500; and that she applied to him to purchase this property, referring him for her title to the writ of possession and service. He visited the court records at Exeter, and found the writ of possession awarded, docketed and served by an officer, giving her the lawful possession of the premises; and in October, 1859, after this examination, he agreed to pay her $2500 for her title; she delivered the deed, and he paid her the amount, $2000 of which was in bonds, well secured. He says, on cross-examination; Mrs. Frink derived her title from her husband, as I understood. I have no knowledge of her title, except as appears from the suit. I only know from hearsay the ground on which the suit was based, not having been connected with the case at any time, unless asked by her for some advice, of which I have no recollection in particular. Before taking my deed, I examined the docket only, and the writ of possession and officer's return. I have no recollection of seeing any other papers, or turning to any other record of the case. I am certain I saw nothing to impart any distrust as to the title, as represented by the docket and writ of possession. My impression is, I saw the writ and declaration. I can not recollect that I saw any verdict, or plea. I have no recollection of any conversation between myself and the clerk. I wrote one or more letters to D. Frink, and perhaps to Mr. Hatch, relating to the controversy. I can not define the nature or reservations of the father's deed, but I doubtless knew them in the early stages of the litigation. Mrs. Frink made no representations of her interest, except to refer me to the writ of possession, of which she had a copy. I obtained the writ of possession and officer's return of Mr. Hackett, and carried it to the clerk's office. I am unable to say what was the extent of Mrs. Frink's possession, but am sure she had claimed to be in possession of portions of the premises, and had resided there for short intervals. I understood the property to be of the value of $2500 (but states no inquiries). I understood Mrs. Frink's title was derived from the title of her husband, but of the particular legal rights upon which she had recovered the property, as represented in the writ of possession, I was not informed. How much she claimed as heir, how much as widow's dower, and how much by any other relation, I did not learn. My profession is the law. I may have become acquainted with the extent, on which each side asserted and denied the rights of the other to be, but after the suit was ended, and at the time I purchased, I had lost all particulars of the controverted points. I wrote to an attorney in Exeter to procure and send a copy of the judgment and whole record to Mr. Hackett, for the purpose of my suit againt D. Frink for the premises, and was subsequently informed that the record had to be completed; all steps needful to that were taken by Mr. Hackett, as I suppose. Attached to Mr. Hatch's deposition is a copy of a letter of Mr. Smith to Mr. Hackett, dated June 14, 1857, in which he says: "In respect to Mr. Frink's proposition, she (Mrs. Frink) says she is willing to make a division

of the farm by two or three disinterested men, neither belonging to
Newington, and perfect titles to each other in fee, thereby waiving
all questions of dower. * * One half of the Frink note can come
out of her half of the property, ditto of Mathes' and Morrison's
claims.   Now she is willing to pay her half of each, and let them
pay their half of each, * * then the rest of the farm, * * one half
belongs to Olivia (Mrs. Frink), and the other half to the Frinks.
* * Olivia is willing for the judge of probate to appoint the men to
divide the farm, or she will select one, and the Frinks one, and these
two, if they differ, may select the third." At the foot of this letter
is a note of Mrs. Frink to Mr. Hackett referring to it, and asking
his attention to it. . Also, a letter from Mr. Smith to D. Frink,
dated March 30, 1858, in which he says : "Mrs. Frink is here, and
will go to take possession of the farm to-morrow or next day, and
put a tenant on it.   Of course no decision can be made until the
debts are ascertained, and an amount of the farm sold equal to pay-
ing them off, and then the one half that will belong to her of the
remainder will be set off." Also, a copy of a letter from Mr. Hatch
to Mr. Smith, dated March 16, 1859, containing proposals of com-
promise, one of which is, "(3) The real estate shall be equally
divided by referees to be agreed on by the parties." And a letter
of Mr. Smith to Mr. Hatch, dated March 27, 1859, acknowledging
the receipt of his letter, and refusing to negotiate further.

*J. S. H. Frink*, for the plaintiff.
We contend that the record was so extended as to embrace a
larger quantity of the estate than the defendant was by law entitled
to recover judgment for, because no notice was given to the peti-
tioner, and he was not present, and was not heard in regard to the
making up of said record ; and because the papers indicating what
the judgment was were absent, and no effort was made to find the
same, or to prove their contents.   *Willard* v. *Harvey*, 24 N. H. 348.
Such an entry of judgment not founded upon any papers on the
files, but made in the absence of the plea and verdict, and without
notice to the petitioner, can not bind him.   There has been no such
change in the title to this property, as to risk injustice to any one,
if this entry of judgment is corrected.   Mr. Smith is not a purchaser
without notice.   He has known from the beginning his grantor's
title to these premises.   Mrs. Frink was not in possession of the
property at the time of his purchase, but it was in the possession
and occupation of the heirs of Cyrus Frink.   *Haddock* v. *Wilmarth*,
5 N. H. 188; *Rogers* v. *Jones*, 8 N. H. 276; *Colby* v. *Keniston*, 4 N. H.
262; *Cutting* v. *Pike*, 21 N. H. 550.
The incomplete state of the record, and the absence of important
papers at the time of his examination of it, should have put a man
of his profession upon inquiry.
His own letters show that he knew that his grantor was entitled
to but one half of said premises at the time of the purchase.
There is, then, a manifest error in the record as it now stands,
which error did not intervene at or about the time judgment in
said suit was rendered, but has arisen long after by the attempt to

extend the judgment, without proper notice, in the absence of those papers which alone could show what the judgment was, and without proof of their contents. The rights of third parties are not involved, and equity demands that said record should be amended, so as to represent the true judgment.

We refer the court to the following authorities, as showing their power, and what has been the practice, in granting amendments in cases like that under consideration. *Chamberlain* v. *Crane*, 4 N. H. 205; *Wendell* v. *Mugridge*, 19 N. H. 109; *Willard* v. *Harvey*, 24 N. H. 348; *Emery* v. *Berry*, 28 N. H. 589; *Laighton* v. *Lord*, 29 N. H. 255, 262; *Claggett* v. *Simes*, 31 N. H. 22, 23.

Although we do not conceive that the court will refuse to amend a record *aliunde* when the equity is plain, *Willard* v. *Harvey*, 24 N. H. 349, yet we submit that this question is avoided here. We ask the court to amend the record by reference to the docket entry of "judgment on the verdict," and the verdict, which being lost, it is clearly competent to prove its contents by other evidence. The court may also well amend by reference to the minutes of the presiding justice. If the court should hold that it is not within their power to grant the amendment, we still submit that the record as now extended being manifestly erroneous, and the error having arisen from no fault of this party, but through mistake of an officer of the court, is voidable at the discretion of the court, and we ask the court to decree it a nullity, and to make an order for a new entry of judgment.

We claim that our review is not barred till three years after the judgment was extended.

*Mr. Smith*, for the defendant.

The case is anomalous. The questions of fact raised are the same that were the subject of consideration by the jury. I am in doubt, how the court can settle the same question of fact tried by the jury. It is alleged that the verdict of the jury was for one half the land, yet the judgment is for the whole. This representation is made on no definite recollection of the counsel. The petitioner proceeds on the grounds of a loss of the verdict, but the writ of possession is for the whole land demanded in his writ. What is asked is the substitution of another verdict, for what the docket shows was the true one. The court must re-try the whole case to see what verdict was recovered. The two writs of possession conform to the verdict as we allege it to be, and possession has been given according to such writ, and the party now comes and asks to have another verdict substituted.

I have searched in vain for any precedents. The rule as to amendments is laid down in *Willard* v. *Harvey*, 24 N. H. 348. The petitioner's brief is, that the judgment is improperly extended. It was the duty of the clerk to extend the record, and to ask the direction of the court in any case of doubt. The clerk found papers wanting, and applied for directions, and made up the record according to the papers. He had no authority to cite in any body. So far as the law decided, the judgment was properly extended.

To amend a record, there must be something to amend by. No amendment can be made unless there is something to amend by. The court will not order an amendment inconsistent with the papers found on file; they will not substitute a new record. It would be a perversion of language to call that an amendment; common sense shows it would be a substitution, not an amendment. I have failed to discover any such thing in the cases referred to.

The brief of the plaintiff carries evidence of consciousness of weakness. One other position I will call the attention of the court to. Nearly all the evidence is outside of their records—the recollections of parties. The doctrine in relation to the amendment of records is, that the court will not go out of their records. A note is not a part of the records, or to be referred to. If the court will examine, they will find abundant authority, that no extraneous matters are to be referred to. The demandant was kept out of possession, but she had legal possession.

The plaintiff's cases do not help him out. A purchaser can not take advantage of any fact of which he had knowledge, or reason to inquire. The conveyance of Mrs. Frink was exactly according to the record of her title. The verdict was consistent with the judgment. What else remained to make a perfect title? . The cases show that a purchaser is bound to inquire; they have no application to this case. The plaintiff has not lost his right of review upon a petition. If they have lost it, it is not our fault.

*Hatch*, in reply.

The verdict was for one half. There was no pretense that the plaintiff's title extended to more. Of these facts there is no denial, and no pretense of any. The only entry was, "verdict for the plaintiff." So it remained till a new controversy. The clerk was applied to, and no plea or verdict was found, but the record was extended so as to cover the whole. Though a writ of possession had been taken for the whole, that fact was not known to the petitioner. He asks for an amendment of the record, and he is entitled to be restored to what he is deprived of by mistake and fraud. But it is said, there is nothing to amend by, and without it the record can not be amended. What good would an amendment do if nothing could be shown inconsistent with the state of facts as they now appear ? In *Wendell* v. *Mugridge*, 19 N. H. 109, an entire record was transferred to a different case. I refer to the other cases cited to to show that the power of the court is broad enough to prevent injustice. To prove that the missing papers are as we say, we bring the minutes of the trial of both the court and the counsel. The court have gone much further in amending records where justice required it to be done.

But it is said this amendment will affect the title of a *bonâ fide* purchaser. It is not so. The sale was to her brother and counsellor. He knew her title, and admits, in his letters, that his sister's claim was of one half only. He is estopped by his letters, his position, and his acts. He found no plea, or verdict, on file; this alone should have put a lawyer upon inquiry.

We claim that the statute limitation of our review does not begin to run till the error is discovered. We stand like a party discovering a fraud.

BELL, C. J. It is part of the ordinary duty of the clerk to extend the records of the court from the process and pleadings on file, and from the minutes and entries on the dockets. *Willard* v. *Harvey*, 24 N. H. 349. He has the right to regard the entries made, and the process issued by his predecessors, as correct; *Fay* v. *Wenzell*, 8 Cush. 317; and if, from their inaccuracy, errors are found in the record as extended, the fault is not his. He has no power, and it is no part of his duty to inquire elsewhere, and he has no right to cite others before him, or to decide upon extrinsic evidence. In this case the clerk found upon the docket the entry of a general verdict for the plaintiff. He was right in regarding it as a general verdict for the whole of the demanded premises. The proper entry of the verdict, if it was returned for a part only, was, Verdict for the plaintiff for half the demanded premises, and for the residue for the defendant. The attempt to cast censure upon the clerk, who made the record, is groundless. It was the duty of the counsel to his client to see that there was a verdict signed, and that it was for no more than was ordered.

Every court exercising a continuing jurisdiction—having an office for the preservation of its records, and the charge of those records by a proper officer—has, by law, an implied authority to amend its records, to make them conform to the facts and truth of the case; *Remick* v. *Butterfield*, 31 N. H. 85; *Dudley* v. *Butler*, 10 N. H. 284; 24 N. H. 344; *Claggett* v. *Simes*, 21 N. H. 43; or, as the same doctrine is well expressed by *Fletcher*, J., in *Balch* v. *Shaw*, 7 Cush. 284, there can be no doubt that it is competent for a court of record, under its general inherent and necessary authority, to correct the mistakes and supply the defects of its clerk or recording officer, so as to have the record conform to the actual facts and truth of the case. And this may be done at any time, as well after as during the term. The length of time, in this case (12 years), between the granting of the license and the making up of the record, does not take away the right or jurisdiction of the court. S. P., *Fay* v. *Wenzell*, 8 Cush. 317; *Limerick Petr.*, 19 Me. 186; *Lathrop* v. *Paige*, 26 Me. 121; *Woodcock* v. *Parker*, 35 Me. 138; *Lewis* v. *Ray*, 37 Me. 234; *West* v. *Weed*, 25 Conn. 337; *Chichester* v. *Candie*, 3 Cow. 39; *Hunt* v. *Grant*, 20 Wend. 90.

This authority not only extends to the correction of clerical errors, but to the restoration of papers which have been improperly altered or defaced, and the substitution of new ones where the originals are purloined, or lost. *Douglas* v. *Yallop*, 2 Burr. 722; *Holliston* v. *Judges*, 8 Ohio (N. S.) 201.

It is contended, and so are some of the authorities, that an amendment of a record can not be made unless there is something to amend by, by which is understood, something upon the files or records of the court. *Wendell* v. *Mugridge*, 19 N. H. 112; *Atkins* v. *Sawyer*, 1 Pick. 354; Cro. Jac. 628, 632. But in other cases such

amendments have been made according to the minutes of the judge. *Coughran* v. *Gutcheous*, 18 Ill. 390; *Brady* v. *Little*, 21 Geo. 132; *Petrie* v. *Hannay*, 3 D. &. E. 659; 1 Tidd. Prac. 661; *Newcomb* v. *Green*, 1 Wils. 33; 2 Stra. 1197, S. C.; *Eddowes* v. *Hopkins*, 1 Doug. 376; *Tarlton* v. *Fisher*, 2 Doug. 672. Here we have the minutes of the judge and counsel entirely clear upon the point.

But we think it clear, upon the authorities, that the court may make such amendments upon any competent legal evidence, and that they are the proper judges as to the amount and kind of evidence requisite in each case to satisfy them what was the real order of the court, or the actual proceeding before it; what was the proper entry to be made on the docket, and how the record should be extended. 8 Cush. 317; 7 Cush. 284; 19 Me. 186; 25 Conn. 337; 8 Ohio (N. S.) 201; before cited.

Where there is nothing more to rely on than mere memory, the court will act, if at all, with great caution. *Porter* v. *Vaughan*, 22 Vt. 273; *Coughran* v. *Gutcheous*, 18 Ill. 390.

The position that the title has passed into the hands of a *bonâ fide* purchaser without notice, signally fails. A letter, written by the purchaser only a little more than half a year before his purchase, shows that he then well knew that his sister's title extended to one half the premises only. There is nothing but the singular forgetfulness of right displayed by the claim, which gives any color to the pretense that the facts could be forgotten.

*The amendment is allowed.*