CASE 78—ACTION BY MARKS & STIX AGAINST WILLIAM HARDY AND A.
T. HARDY ON ACCOUNT.

# Marks & Stix v. Hardy's Admr.

### APPEAL FROM LEWIS CIRCUIT COURT.

FROM THE JUDGMENT PLAINTIFFS APPEAL. REVERSED.

PLEADING — PETITION — AMENDMENT — PARTNERSHIP — COMPROMISE—
EVIDENCE—WRITTEN CONTRACT—ALTERATION OR MODIFICATION BY
ORAL TESTIMONY.

Held: 1. The court did not abuse its discretion in refusing permis-
sion to amend the petition after the issues had been made up
for fully a year, and in the meantime defendant had died, and
the conduct of his case was in the hands of his administrator.

2. On an issue as to whether a defendant was a member of a firm,
mercantile reports were not admissible, where it was not shown
that they were based on information given by him or by his au-
thority, or that he knew the existence thereof, or of the general
reputation that he was a member.

3. Evidence of a compromise offered by plaintiffs was properly re-
jected where it did not appear that defendant himself made an
offer of compromise, or authorized it, or that he knew that an
offer was made.

4. Where, to establish the existence of a firm, articles of dissolution
are introduced in evidence by plaintiffs, evidence of declarations,
made at the time of their execution, by the party sought to be
bound, denying the existence of the firm, and asserting that he
only signed the same on assurance of counsel that it
was right to do so, and that they would not bind
him, was thereafter properly admitted as a part of a transac-
tion which plaintiffs themselves had undertaken to introduce
in evidence.

5. The evidence was not a violation of the rule against oral testi-
mony to alter or modify a written contract, in the absence of an
allegation of fraud or mistake; the controversy not being be-
tween the parties to the instrument, but between strangers and
a party thereto.

6. Declarations made by one sought to be bound as a partner, to
the effect that he was not a member of the firm in question,
are inadmissible.

W. B. PUGH, SAML. J. PUGH AND ROBERT D. WILSON, FOR APPELLANTS.

### CLASSIFICATION OF QUESTIONS IN ISSUE.

1. Amended Petition. Right to file. Estoppel. ·Cavanaugh v. Weber, 11 Ky. Law Rep., 858; Ray v. Longshaw, 4 Ky. Law Rep., 904; Faris v. Dunn, 7 Bush, 276; Collyer on Partnership, secs. 87-90; Webster v. Taylor, 39 New Jersey Law, 102; Wechselberg v. Flour City Nat. Bank, 64 Fed. Rep., 90, 97.

2. Competency of testimony of general reputation, notoriety and publicity of partnership, due to negligence of party or otherwise, as corroborative evidence. Mercantile reports. Webster v. Taylor, 39 New Jersey Law, 102; Greenleaf on Ev., vol. 21, p. 486, sec. 483; Gulick v. Gulick, 14 New Jersey Law, 578; Whitney v. Sterling, 14 Johns., 215; Allen· v. Rostain, 11 S. & R., 362; Turner v. McIlhaney, 8 California, 575; Atwood v. Meredith, 37 Miss., 635; Gaffney v. Hoyt (Idaho), 10 Pac. Rep., 34; Cross v. National Bank, 17 Kansas, 336; Hunt v. Royland, 11 Cushing, 117; Sage v. Tapper, 38 Mich., 253-258; Stoddart v. McMahan, 35 Texas, 267.

3. Proof of admission inferred from offer of settlement. Greenleaf on Evidence, vol. 1, p. 268, (notes); Eng. & Am. Ency. of Law, 716-717 (notes.)

4. Proof of declarations, as part of res gestae, to rebut inference otherwise drawn from unequivocal act. Greenleaf on Evidence, vol. 1, sec. 108; Bateman v. Bailey, 5 T. & R., 512.

5. Proof of declarations, as part of res gestae, to rebut inference otherwise drawn from unequivocal act. ·State v. Winner, 17 Kansas; Nutting v. Page, 4 Gray (Mass.), 584.

6. Proof of declarations made by partner in his own interest and in denial of his membership of a firm. Greenleaf on Evidence, vol. 1, sec. 123; Danforth v. Carter, 4 Iowa, 230; Barclay v. Dixon, 22 Ala., 370; Carson, Pirie, Scott & Co. v. Gillitt, 2 N. Dakota, 255; Clark, et als. v. Huffaker's Admr., 26 Mo., 264; Eng. & Am. Ency. of Law, vol. 9, p. 5.

W. C. HALBERT, FOR APPELLEE.

### POINTS MADE AND AUTHORITIES CITED IN APPELLEE'S BRIEF.

1. The circuit court has a large discretion in the matter of allowing amendments to pleadings, and unless it has abused its sound discretion confided to it in such matters, this court will not reverse for its rulings in passing 'on such questions. Elizabethtown, Lexington & Big Sandy R. R. Co. v. The Catlettsburg

Water Co., 22 Ky. Law Rep., 1633; Newton v. Long, 13 Ky. Law Rep., 698; Williams v. Cooper, &c., 14 Ky. Law Rep., 284; Spurr v. Bachelor, 19 Ky. Law Rep., 1642.

2. The appellants were not prejudiced by the rejection of the amendment as they had the right to prove the partnership in the store at Willard by proof of a written or parol agreement, by acts, conduct, admissions, &c. 1 Lindley on Partnership (2 Am. ed.), pp. 178-9; 1 Greenleaf on Ev., sec. 483 (Lewis ed.).

3. The copies of the commercial reports, letters to appellants from other merchants and attorneys were hearsay of the rankest kind and wholly inadmissible as evidence without showing that William Hardy made or procured them to be made, &c. Cook v. Slate Company, 36 Ohio State, 135; 38 Am. Rep., 568; 22 Am. & Eng. Ency. of Law (2d ed.), 50; Abbott's Trial Evidence (2d ed.) p. 260.

4. The common understanding and general reputation of the village of Willard as to who was interested in the store was equally incompetent. Abbott's Trial Ev., p. 260; 22 Am. & Eng. Ency. of Law, 50; 2 Rice on Ev., 1156; Halliday v. McDouglas, 20 Wend., 81; Brown v. Crandall, 11 Conn., 92.

5. The appellee had the right to prove by the witness, A. H. Parker what took place between William Hardy and his son, Ad., at Willard on July 8, 1900, when the contract was drawn and executed terminating their business relations without any plea of fraud or mistake in the contract as appellants were neither parties or privies to the agreement, the proof was offered to explain and contradict. 11 Am. & Eng. Ency. of Law, (2d ed.), 548-550, 1 Greenleaf, sec. 279, Lewis ed.; Strader v. Lambeth, &c., 7 B. Mon., 589; Dills v. May, 3 Ky. Law Rep., 765.

6. There was no testimony introduced by appellants showing that William Hardy ever made or authorized any one else to settle or compromise the debt of appellants, and the testimony of Remke as to an offer made to the Alms & Doepke Co. by A. H. Parker was incompetent without showing authority in Parker to make the offer, which was not done; it was also incompetent because the witness did not prove any admission of the partnership. Mechem on Agency, sec. 100.

7. A plea of estoppel to be available in this State must be plead and relied on in the pleadings. Excelsior Coal Mining Co. v. Virginia Iron and Coal Co., 23 Ky. Law Rep., 1836; Faris v. Dunn, 7 Bush, 276; Ford v. Mayo, 12 Ky. Law Rep., 665; Stacy v. Holiday, &c., 9 Ky. Law Rep., 517; Ray v. Longshaw, &c., 4 Ky. Law Rep., 905.

8. The business of buying and selling wine cask staves conducted by William Hardy in his own name and also in the name

of William Hardy & Son, was not such that a partnership formed to carry it on would constitute what is termed a commercial partnership, and being a non-commercial partnership, if any existed at all, the authority of one member of the firm to bind it on any contract outside of the ordinary course of the business, is a question of fact and must be affirmatively shown by the plaintiffs. Judge, &c. v. Braswell, &c., 13 Bush, 67, 22 Am. & Eng. Ency. of Law, (2d ed.), 144-7; 1 Lindley on Partnership, 2 Am. ed., secs. 124, 125.

9. The sole evidence showing or even conducing to show any partnership between William Hardy and his son, Ad., in the store at Willard, consisted of parol declarations made by William Hardy in desultory conversations held on the streets of Vanceburg after the store had been sold by his son, and to and with persons who were not creditors of the alleged partnership, and the only admission of any interest in the store is proven by one witness alone, J. W. Mathewson, who was unable to fix the month or year when the conversation occurred.

10. The partnership being denied by defendant, no proof being offered showing the formation of an actual partnership on the part of defendant, no holding out by him of his son as his partner in the store, no control, use or management of the store being taken, had or exercised by defendant, and the sole evidence of the partnership consisting of a declaration made to Mathewson, it was competent for defendant's representative in order to rebut such declaration and contradict it to prove other declarations made by the defendant in reference to the store and his connection with it; and it was likewise competent to prove the acts and conduct of defendant when his attention was called to the fact the store had been started and what steps he then took to prevent his son using his name in prosecuting the business. Fletcher v. Pullen, 7 Maryland, 205, 14 Am. St. Rep., 355; Morgan v. Farrell, 58 Conn., 413, 18 Am. St. Rep., 282; Thompson v. First National Bank, 111 U. S., 529, 23 L. C. P. Co., 507.

11. William Hardy being dead at the trial, the acts, conduct and declarations of the deceased were the only evidence in the power of his personal representative to adduce to contradict and rebut the parol declarations testified to by Mathewson, &c., and were not hearsay nor a violation of the rule rejecting hearsay testimony; it complying with the general rule of law requiring the best evidence to be produced which the nature of the case admits of. 31 U. S., 352; Chicago, B. & O. R. R. Co. v. Gregory, 58 Ill., 272; St. Louis, K. & A. R. R. Co. v. Chapman, 38 Kan., 307.

Marks & Stix v. Hardy's Admr.

THOMAS R. PHISTER, FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. Amended petition should not be filed after the jury is sworn. Yocum v. Foreman, 14 Bush, 496; Metropolitan Ins. Co. v. Blesch, 22 Ky. Law Rep., 530; Spurr v. Bachelor, 19 Ky. Law Rep., 1642; Williams v. Rogers, 14 Bush, 781.

2. Reports of commercial agencies, &c. are not competent to prove a partnership. Cook v. State Co., 36 Ohio State, 135; Bowen v. Rutherford, 60 Ill., 41.

3. Acts and declarations of the person charged as partner are competent evidence on the issue of partnership. Fletcher v. Pullen, 70 Md., 205, 14 Am. State Rep., 355; Morgan v. Farrell, 58 Conn., 413, 18 Am. State Rep., 282; Thompson v. First National Bank, 111 U. S., 509; Danforth v. Carter, 4 Iowa, 230.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

The appellants, Marks & Stix, are boot and shoe merchants of Cincinnati, Ohio. At the time this action was instituted, William Hardy resided in Vanceburg, Lewis county, Ky. A. T. Hardy, who is his son, lived at Willard, Carter county, Ky., where he carried on a general store under the firm name of William Hardy & Son. The firm of William Hardy & Son in June, 1900, purchased of the appellants $450 worth of shoes on credit. The bill not having been paid when it fell due, this action was instituted against William Hardy and A. T. Hardy, as composing the firm of William Hardy & Son. A. T. Hardy made no defense. William Hardy filed an answer putting in issue the fact that he was a member of the firm in question. After the issues were made up, William Hardy died, and the action was, by consent, revived in the name of his administrator, Andrew T. Hardy. About a year after the completion of the issues, the action coming on for trial, appellants offered to file an amended petition, setting up certain matters alleged in the way of estoppel as against William Hardy. The motion to file this amendment, upon objection, was overruled by the

court. Upon the trial the jury returned a verdict in favor of appellee, of which the appellants are now complaining.

The uncontradicted facts show that William Hardy was a man about 71 years of age. and that he lived in Vanceburg, Lewis county, Ky., from 50 to 75 miles from Willard, Carter county, Ky.; that for many years prior to the events constituting the subject-matter of this litigation he had been engaged in the business of buying and selling staves for wine casks, and had built up quite a reputation in this business, and accumulated some money; that his son A. T. Hardy was not of age, and that his father sent him over to Willard for the purpose of buying wine-cask staves for cash; that, after he was settled there, he opened up a general merchandise store under the firm name and style of William Hardy & Son, which was the name of the firm engaged in the business of buying and selling wine-cask staves; that he advertised the store under the firm name of William Hardy & Son, and all of his billheads and letters were so marked, but that there was no sign over the store.

The first error complained of is the refusal of the court to permit the amended petition to be filed after the case was called for trial. The issues had been made up for fully a year theretofore. William Hardy had in the meantime died, and the conduct of the defense to the action was in the hands of his administrator. We do not think, under these circumstances, that the court abused the large discretion conferred upon it in the matter of permitting amendments to be filed, by refusing the one in question. Elizabethtown, Lexington & Big Sandy R. Co. v. Catlettsburg Water Co. (22 R., 1632) 61 S. W., 47.

The second error complained of by appellants is the refusal of the court to permit them to prove by mercantile agents' reports who composed the firm of William Hardy & Son,

or the general report in and around Willard that the partnership was composed of William Hardy and A. T. Hardy. It was not shown that the mercantile agents' report were based upon any information given by William Hardy, or by any one authorized by him, or that he knew that such reports were being gotten up, or that he knew of the existence of what is called the "general reputation" that he was a member of the firm. The great weight of authority, as well as sound reason, is against the admissibility of this evidence. Am. & Eng. Encycl. of Law, vol. 22 (2d Ed.) p. 50, thus states the rule as to general reputation: "The existence or nonexistence of a partnership between certain persons can not be proved by evidence of general reputation or understanding that such persons were or were not partners, and such evidence is inadequate, even in aid of other testimony to the same effect. But evidence of general reputation in the community is admissible to show that plaintiff gave credit in reliance upon the supposed partnership, and this evidence has been admitted where it appeared that such common report was known to the partners sought to be charged." The learned author also lays down the rule that reports from a mercantile agency are inadmissible. The inadmissibility of general reputation to establish a partnership is sustained by the following cases:

Cook v. Slate C., 38 Am. Rep., 568; Hunt v. Jucks, 1 Am. Dec., 555; Grafton Bank v. Moore, 38 Am. Dec., 478; Smith v. Griffith, 38 Am. Dec., 639; Macy v. Combs, 77 Am. Dec., 103; Adams v. Morrison, 113 N. Y., 152, 20 N. E., 829; Brown v. Crandall, 11 Conn., 92; Tanner, etc. v. Hall, etc., 86 Ala., 305, 5 South., 584; Stiewel v. Borman, 63 Ark., 30, 37 S. W., 404; Bowen v. Rutherford, 14 Am. Rep., 25; Earl v. Hurd, 5 Blackf., 248; Bryden v. Taylor, 3 Am. Dec., 554; Goddard v. Pratt, 16 Pick., 412, 28 Am.

Dec., 259; Sager v. Tupper, 38 Mich., 258; Taylor v. Webster, 39 N. J. Law, 102; Halliday v. McDougall, 20 Wend., 81.

William Hardy was an old man, and lived from 50 to 75 miles from Willard. There is no evidence in the record to show that he knew his son was carrying on a general merchandise store under his name, or that he ever heard any of the rumors that he was a member of the firm. To hold one responsible as a partner under such evidence would be to place him wholly in the power of designing persons who had it in mind to ruin him. As was well said by Judge Cowen in the case of Halliday v. McDougall: "There is scarcely a question upon which common reputation is more fallible. A contract of partnership is, in its nature, incapable of being defined by laymen; and whether an apparent partnership be really so, or a contract of some other character, is often a most embarrassing legal question with the ablest lawyers. General reputation of the ordinary contracts, the legal nature and effect of which are understood by men of business in general, would be much more proper subject of proof by general report. This the law rejects, yet I am not aware that there is a necessity for resort to such proof in the one case more than the other."

In Brown v. Crandall, 11 Conn., 22, the court said: "A person of doubtful credit might cause a report to be circulated that another person was in partnership with him for the very purpose of maintaining his credit. His creditors might also aid in circulating the report for the purpose of furnishing evidence to enable them to collect their debts."

The court also properly rejected the evidence of the compromise sought to be introduced by appellants. It did not appear that William Hardy made any offer of compromise himself, or authorized any one to do so for him, or that he knew that such an offer was made. Neither his assignee,

nor the attorney of the assignee, was his agent for this
purpose.

It is also complained that the court erred in permitting
A. H. Parker to testify to declarations of William Hardy
as to the existence of the firm of William Hardy & Son
at the time the articles of dissolution between himself and
his son were signed. It seems, when William Hardy finally
heard that his son was engaged in the business of general
merchandise at Willard in his name, that he went with his
lawyer, A. H. Parker, to Willard, and then and there severed
all business connection with him in pursuance of which
formal articles of dissolution were drawn up and signed by
the parties. Appellants introduced A. H. Parker as their
witness, to show the contents of this paper (having given
notice to the appellee requiring its production at the trial),
for the purpose of establishing the fact that the existence
of the firm was recognized by William Hardy in the articles.
of dissolution. This evidence having been introduced by
appellants, appellee undertook to show by Parker that, al-
though William Hardy finally signed the articles of disso-
lution, he at the time denied the existence of the firm, and
only signed the paper upon the assurance of his counsel that
it was right so to do, and would not obligate or bind him as
a partner. The court very properly admitted this evidence.
It constituted a part of the transaction which appellants
had themselves undertaken to introduce. The rule is ele-
mentary that, where a transaction is placed in evidence, all
that took place at the same time, and which was a part of
it, may also be shown. One can not introduce a part of a
conversation or transaction which he deems to his interest,
and exclude the remainder. What was said by William
Hardy at the time the articles of dissolution between his
son and himself were drawn up and signed was a part of
the transaction itself, and he had the right to introduce

his declarations on the subject, in order to show his con-
struction of his position in the matter. Nor was this in
violation of the rule against introducing oral testimony to
alter or modify a written contract, in the absence of an
allegation of fraud or mistake. That rule might apply as
between the father and son, but it has no place in the con-
troversy between William Hardy and appellants.

In speaking upon this subject in the case of Strader v.
Lambeth, etc., 7 B. Mon., 589, it was said: "Between the
parties to the instrument, such evidence, it is true, is only
admissible when the party offering it first shows that the
writing, either by fraud or mistake, was drawn differently
from what the parties intended, or was executed under cir-
cumstances tending to prove that the contract was usurious.
But when the parties themselves do not rely upon the writ-
ing as drawn, but admit the contract to be other than that
which it exhibits, this rule has no application. Nor are
strangers to the instrument concluded by its terms, or es-
topped to show by parol evidence that the contract of the
parties is different from what it purports to be on the face
of the writing; and as estoppels, where they exist, must be
mutual, it follows that, in a controversy with strangers
to the instrument, the parties to it are not themselves es-
topped to explain or contradict it by parol evidence." See,
also, Greenleaf on Evidence (16th Ed.) vol. 1, section 279.

But the court erred in permitting appellee to prove by
various witnessess declarations made by William Hardy in
his own interest, to the effect that he was not a partner
with his son in the general merchandise venture which the
latter was conducting at Willard under the style of William
Hardy & Son. These declarations were essentially hear-
say, and contrary to the rule that one may not make evi-
dence in his own behalf by his declarations, and were highly
prejudicial to the interests of appellants. It is said in sec-

tion 110, vol. 1, Greenleaf's Evidence (16th Ed.): "It is to be observed that, where declarations offered in evidence are merely narrative of a past occurrence, they can not be received as proof of the existence of such occurrence. They must be concomitant with the principal act, and so connected with it as to be regarded as the mere result and consequence of the coexisting motives, in order to form a proper criterion for directing the judgment which is to be formed upon the whole conduct. It is a necessary consequence of the principle as above explained that declarations made after the equivocal act has ended can not be regarded as forming a part of it, complementing and interpreting the physical part of the act; and they therefore come as ordinary assertions of a past fact, obnoxious to the hearsay rule, and not admissible under the present principle." The American & English Encycl. of Law, vol. 9, (2d Ed.) p. 50, thus states the rule: "An extrajudicial, self-serving declaration of a party is generally hearsay evidence, and is no evidence in his behalf, unless it constitutes a part of the *res gestae* or is made in the presence of the opposite party, and is acquiesced in by him." See, also, Terrell v. Commonwealth, 13 Bush, 246, and Penn v. Fightmaster (13 R., 449) 17 S. W., 334.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.

Extended opinion by Judge Barker:

Our attention has been called by counsel for appellants to the use of the following language in the opinion: "William Hardy was an old man, and lived from fifty to seventy-five miles from Willard. There is no evidence in the record to show that he knew his son was carrying on a general mer-

chandise store under his name, or that he ever heard any of the rumors that he was a member of the firm." And it is suggested that this might be construed, when the case comes on for trial, into meaning that the admissions of Hardy that he was a member of the firm were incompetent evidence. We think that the context shows that the language of the opinion is confined to the want of knowledge on the part of William Hardy as to the evidence upon the general reputation that he was a member of the firm was based, and had no reference to any other evidence in the case. However, in deference to the apprehension of counsel, the opinion is extended as indicated.