JORDÁN *v.* GÓMEZ ET AL.

APELACIÓN procedente de la Corte de Distrito de Arecibo.

No. 587.—Resuelto en marzo 21, 1912.

ANOTACIÓN DE DEMANDA EN EL REGISTRO—SU EFECTO EN CUANTO A POSTERIORES COMPRADORES—TERCEROS.—Anotada una demanda reclamando el dominio de una finca en el registro de la propiedad, aquellos que con posterioridad adquieren la finca no pueden alegar que desconocían la existencia del pleito y están obligados a estar y pasar por lo que resulte del pleito, tanto más cuando del mismo registro aparecen ciertas anotaciones de embargo que investigadas por los posteriores compradores, los llevaría al conocimiento de que la finca reclamada pertenecía al demandante.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Manuel F. Rossy.*

Abogados de los apelados: *Sres. Antonio Suliveres y Luis Llorens Torres.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El presente es un pleito sobre tercería de dominio. Manuel Jordán Correa entabló demanda en la Corte de Distrito de Arecibo contra Federico A. Gómez y Juan Bautista Román, alegando que Gómez había obtenido en la propia corte una sentencia a su favor en el pleito que siguiera contra Román en cobro de pesos, y que para ejecutar dicha sentencia había embargado como de la propiedad de Román cierta finca de 29 cuerdas de terreno, situada en el barrio de Caguana, de Utuado, dentro de la cual estaban comprendidas 20 cuerdas pertenecientes al tercerista Jordán. Alegándose además en la demanda que Jordán tenía la posesión de las 20 cuerdas como único dueño que era de ellas.

El demandado Román fué emplazado debidamente y, como no contestara, fué anotada su rebeldía de acuerdo con la ley. El otro demandado Gómez contestó, en 16 de diciembre de 1908, negando que las 20 cuerdas a que se refería la demanda formaran parte de las 29 por él embargadas y que pertenecieran al tercerista Jordán, y alegando además, que Juan Bautista Román desde el 12 de abril de 1880, adquirió de José Julián Román la finca embargada, cuyo dominio se hallaba inscrito en el registro a favor de Juan Bautista Román, y que el 9 de diciembre, y sin que a ello se opusiera el tercerista Jordán, adquirió la finca en cuestión en pública subasta, pasando a ser en tal virtud de su propiedad.

Celebrado el juicio, la corte dictó sentencia en contra del tercerista y el tercerista interpuso el presente recurso de apelación.

Examinadas las alegaciones y las pruebas, se llega a la conclusión de que se ha justificado cumplidamente que las 20 cuerdas reclamadas por Jordán están comprendidas dentro de las 29 embargadas por Gómez.

No existe, pues, duda alguna con respecto a la identifica-
ción de la finca, y la cuestión a resolver queda circunscrita
a determinar cuál es el verdadero dueño de las 20 cuerdas en
cuestión, si Jordán o Gómez.

Son hechos probados en el pleito que Gómez en un caso
que siguiera en cobro de pesos contra Juan Bautista Román,
obtuvo a su favor una sentencia, y que, para ejecutarla, hizo
embargar la finca de 29 cuerdas, que aparecía inscrita en el
registro de la propiedad a favor de Juan Bautista Román.

El remate de la finca embargada se señaló para el día 9
de diciembre de 1908. La demanda de tercería de Jordán con-
tra Román y Gómez se archivó en la secretaría de la corte de
distrito dos días antes, o sea el 7 de diciembre de 1908, y se
anotó en el registro de la propiedad un día antes, o sea el 8 de
diciembre de 1908. El remate se celebró en el día señalado,
y por tanto, al adquirir la finca y al inscribirla luego en el re-
gistro, Gómez conocía por los libros del registro, que una por-
ción de ella se reclamaba judicialmente por Jordán como de
su propiedad exclusiva, y él no puede alegar en tal virtud la
condición de tercero inocente en cuanto a la adquisición de
las referidas 20 cuerdas. El adquirió con conocimiento de la
existencia del pleito y él debe estar y pasar por las resultan-
cias del mismo.

Veamos cuáles son esas resultancias. La prueba demues-
tra: Que allá por el año de 1880 José Julián Román vendió a
Juan Bautista Román la finca de 29 cuerdas, venta que se ins-
cribió en la antigua Anotaduría de Hipotecas. Escritura
otorgada ante el Notario Alfonzo, en Utuado el 12 de abril de
1880, y certificaciones del Registrador de la Propiedad de
Arecibo, obrantes en los autos.

Que Juan Bautista Román, a virtud de un contrato celebra-
do el 2 de octubre de 1898, con Juan Antonio Santiago, en-
tregó a éste entre otras la finca de 29 cuerdas. Esta transfe-
rencia de dominio no se inscribió en el registro de la propie-
dad. Contrato privado de la indicada fecha hecho constar
por escrito y acto de conciliación celebrado en el juzgado mu-

nicipal de Utuado el 15 de julio de 1899, que figuran en el récord.

Que allá por el año de 1902 Tomás Negrón interpuso demanda contra Juan Bautista Román y embargó como de Román la finca de 29 cuerdas, y que entonces Santiago estableció demanda de tercería contra Negrón y Román y obtuvo un fallo a su favor declaratorio de que la finca pertenecía a Santiago y· no a Román.   Certificación del acta del juicio, folios 33 y siguientes de la transcripción.

Que en pleito seguido por Manuel Jordán Correa contra Juan Antonio Santiago, en cobro de pesos, obtuvo Jordán una sentencia a su favor, y para ejecutarla, se embargó una finca de veinte cuerdas, que fué luego adjudicada a Jordán el 3 de · octubre de 1905.   Ya hemos consignado que se ha demostrado que la finca de 20 cuerdas es parte de la de 29.   Escritura otorgada ante el Notario Alfonzo en Utuado el 3 de noviembre de 1905, que aparece en los autos.

Y que allá por el año de 1905, Agustín Viruet, en pleito seguido contra Juan Bautista Román, embargó como de la propiedad del demandado la finca de 20 cuerdas y que entonces Manuel Jordán Correa interpuso demanda de tercería reclamando dichas 20 cuerdas como suyas, habiéndose resuelto la tercería a favor de Jordán el 6 de noviembre de 1905.   Certificación obrante a los folios 27 y siguientes de la transcripción.

Las pruebas practicadas demuestran, pues, que si bien la finca de 29 cuerdas perteneció a Juan Bautista Román y se inscribió y continuó inscrita a su nombre en el registro de la propiedad, es lo cierto que Román transfirió su derecho a Santiago desde el año de 1898, y que de Santiago pasó tal derecho a Jordán, en cuanto a 20 cuerdas, desde el año de 1905.

El resultado de las pruebas perjudica al demandado Gómez, porque él, como hemos establecido, no tiene la condición de tercero inocente, ya que al adquirir conocía por el registro la existencia de este pleito y aceptó el riesgo del mismo.

La anotación de la demanda en este caso se tomó a virtud

de lo prescrito en el artículo 91 del Código de Enjuiciamiento Civil, que copiado a la letra, dice así:

"Cuando en una acción que afecte al título o al derecho de posesión de una propiedad inmueble, el demandante al tiempo de presentar la demanda, y el demandado al tiempo de presentar la contestación o en cualquier tiempo después, pidieren se declare que lo que se reclama es suyo, podrán presentar para su anotación al registrador del distrito en que radicare la propiedad o parte de ella, un aviso de la cuestión litigiosa pendiente, el cual contendrá los nombres y apellidos de las partes, el objeto de la demanda o contestación, y la descripción de la propiedad en litigio. Sólo desde el día de la presentación del aviso para ser anotado se considerará que el comprador o la persona que adquiera un gravamen sobre la propiedad litigiosa, tiene conocimiento, para los efectos legales, de la acción pendiente contra las partes designadas por sus nombres verdaderos."

Y comentando preceptos de ley similares a los nuestros, la Corte Suprema de California ha establecido la siguiente doctrina:

"Si con anterioridad a la venta hecha para el cobro de una hipoteca el acreedor inició una acción para establecer sus derechos, y presentó la notificación de encontrarse pendiente de resolución una acción establecida anteriormente, el hecho de haberse presentado tal notificación hace que se considere a los compradores por virtud de la venta en cobro de la hipoteca con conocimiento de las cuestiones que se ventilaban en dicho pleito; y por consiguiente, no son compradores inocentes."

*Randall* v. *Duff.,* 79 Cal., 116.

"Si A establece una acción contra B para reivindicar una propiedad y presenta una notificación de estar pendiente de resolución otra acción establecida anteriormente, y durante la pendencia de la acción, y después de haberse hecho la notificación de encontrarse pendiente de resolución otro pleito establecido anteriormente, C compra a B la finca, y posteriormente se dicta sentencia contra B, dicha sentencia obliga a C y le impide entrar en el dominio de la propiedad comprada."

*Calderwood* v. *Tevis et al.,* 23 Cal., 336.

Pero existen otras circunstancias que hemos tenido en cuenta para llegar a la conclusión que dejamos establecida.

Si algún derecho pudiera asistir al demandado Gómez en este caso, tal derecho estaría solamente fundado en el registro de la propiedad, y siendo esto así, es justo que se tengan en cuenta todas las circunstancias del registro, así las favorables como las adversas.

Además de la anotación de la demanda de tercería, cuyo efecto hemos estudiado y fijado anteriormente, figuraban anotados en el registro dos embargos, que el registrador en las certificaciones que ha expedido en este caso, ha hecho figurar como cargas y que como cargas aparecen consignados expresamente en la misma escritura notarial otorgada por el marshal del distrito a favor del demandado Gómez el 22 de enero de 1909, e inscrita en el registro el 15 de abril de 1909.

El primero de dichos embargos fué trabado en 1902 a instancia de Tomás Negrón y para anotarlo, fué que se trasladó la inscripción de la finca de 29 cuerdas hecha en la antigua Anotaduría, a los modernos libros del registro. El segundo se verificó a instancias de Agustín Viruet en 1905. Si el demandado como es natural y propio en tales casos, indagó acerca del origen de los embargos, debemos presumir que examinó los autos de los pleitos en que fueron decretados, y si así lo hizo, es necesario concluir que él actuó con el conocimiento exacto de que la finca que embargaba no pertenecía a su deudor Román.

Atendidas, pues, todas las circunstancias de este caso, es necesario concluir, porque así lo requieren de consuno la justicia y la ley interpretada rectamente, que debe ser fallado en contra del demandado y a favor del demandante, debiendo en tal virtud declararse con lugar el recurso y revocarse la sentencia apelada, dictándose en su lugar otra por esta Corte Suprema que decida, que las veinte cuerdas de terreno descritas en la demanda que forman parte de la finca de veinte y nueve cuerdas inscrita en el registro, no pertenecen ni a Juan Bautista Román ni a Federico A. Gómez, sino a Manuel Jordán Correa, y que en su consecuencia, deben cancelarse la anotación de embargo y la inscripción hechas a favor del deman-

dado Gómez en el registro de la propiedad.   En cuanto a las costas, creemos que cada parte debe pagar las suyas.

*Revocada.*

Jueces concurrentes: Sres. Asociados MacLeary y Wolf.

Jueces disidentes: Sres. Presidente Hernández y Asociado Aldrey.

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ CON LA CUAL ESTUVO CONFORME EL JUEZ ASOCIADO SEÑOR ALDREY.

En 7 de diciembre del año 1908 Manuel Jordán Correa presentó demanda ante la Corte de Distrito del Distrito Judicial de Arecibo contra Federico A. Gómez y Juan Bautista Román, en juicio de tercería de dominio sobre bienes inmuebles, y en ella establece como hechos los siguientes:

1°. Que Federico A. Gómez había obtenido en dicha corte con fecha 31 de enero de 1907, una sentencia en rebeldía contra Juan Bautista Román, condenándole a pagar al Gómez la suma de seiscientos dollars con intereses al 6% anual desde el 5 de julio de 1906, en que fué registrada la demanda, hasta quedar satisfecha dicha suma, juntamente con cinco dollars 85 centavos por costas y gastos en la fecha de aquella sentencia.

2°. Que expedida orden de ejecución para el cumplimiento de la sentencia, el márshal de dicha corte dispuso en 13 de noviembre de 1908 vender en pública subasta por término de 20 días y al mejor postor, cuyo acto había de tener lugar en 9 de diciembre siguiente, una finca rústica embargada como de la propiedad del demandado, la que se describe así:

"Veinte y nueve cuerdas, cuadro y medio de terreno, radicadas en el barrio de Caguana de Utuado, conteniendo dos casas de maderas del país, techadas de zinc y enclavadas bajo los puntos siguientes: De una estaca de ortegón a la orilla del río Caguana siguiendo agua arriba, a otra estaca de ortegón al lado de una guaba; de aquí guardarraya con José

Cortes por toda una cuchilla arriba, a un tabonuco; de éste, colindando con la hacienda San Andrés, buscando al saliente, a otra estaca de ortegón con sus vueltas y por el derrame de la cuchilla nombrada; de aquí hacia el poniente, lindando con la sucesión de José Román, a una estaca de ortegón; de este al norte con la misma sucesión a otra estaca de ortegón, al pie de un yagrumo, y de aquí al primer punto.''

3º. Que de la finca descrita forma parte una de 20 cuerdas, equivalentes a siete hectáreas, ochenta y seis áreas y ocho centiáreas, a café, guineos, plátanos y malezas, con una casa habitación de maderas del país, techada de hierro galvanizado, cuya finca colinda actualmente por el este y sur con tierras de Nicolás Ríos, por el oeste con las de la sucesión de José María Malaret y por el norte con más terrenos de la finca principal; y es del dominio y propiedad del demandante, quien la posée como único dueño de la misma.

La demanda concluye con la súplica de que, previos los trámites legales, se declare que la finca de veinte cuerdas anteriormente descrita es de la exclusiva propiedad del demandante, ordenándose en cuanto a ella la cancelación del embargo practicado y que la sentencia que se dicte sea inscrita en el registro de la propiedad.

Al contestar la demanda el demandado Federico A. Gómez en diez y siete de diciembre de 1908, lo que no hizo el otro demandado Juan Bautista Román, alegó como primera defensa, que aceptaba los hechos 1º. y 2º. de la demanda, negando general y especialmente todos los demás.

Como segunda defensa, expuso, que el demandado Juan Bautista Román, desde el 12 de abril de 1880, adquirió de José Julián Román como representante de su padre José Ramón Román, por título de compraventa, la finca rústica embargada que se describe en el hecho 2º. de la demanda, cuyo dominio se halla aún inscrito en el Registro de la Propiedad de Arecibo a nombre del citado Juan Bautista Román, sin que en dicho registro conste que tal derecho haya sido traspasado, modificado, anulado o resuelto.

Como tercera defensa, añadió que en 9 de diciembre de 1908, día señalado para la subasta de la finca de 20 cuerdas, fué ésta subastada, sin que a ello se opusiera el demandante Jordán Correa; y no habiéndose presentado más postor que Federico A. Gómez, se le adjudicó por la suma de seiscientos dollars, que debía pagarle Juan Bautista Román, pasando la finca en virtud de la venta judicial, a ser propiedad de Gómez.

Se trajo el pleito a juicio en el día señalado, y de las pruebas que se practicaron y que han venido en el escrito de exposición del caso resulta:

1°. Que por escritura pública de 12 de abril de 1880, de que se tomó razón en la antigua anotaduría de hipotecas el 15 del mismo mes, y fué trasladada a los modernos libros del registro de la propiedad en 19 de diciembre de 1901, José Julián Román, en representación de su *finado padre* José Ramón Román revalidó la venta que éste había hecho a favor de Juan Bautista Román de veinte y nueve cuerdas de terreno con cuadro y medio más, enclavadas en el barrio de ''Caguana,'' de la jurisdicción de Utuado, bajo los mismos puntos que se determinan en la descripción que de dicha finca se hace en la demanda.

2°. Que según convenio consignado en documento privado de 2 de octubre de 1898 entre Juan Antonio Santiago y Juan Bautista Román, el primero dió en permuta al segundo ciento veinte y nueve y media cuerdas de terreno de su propiedad por tres parcelas de terreno pertenecientes a Román, una de veinte y nueve cuerdas y media, más o menos, bajo los linderos y puntos expresados en la escritura que dijo tener Román, otra de treinta cuerdas, y la tercera de cuarenta cuerdas, más o menos; comprometiéndose Román en virtud de esa permuta, a desligar a Santiago de la obligación de satisfacer en cinco plazos a Tomás Jordán la suma de seis mil setecientos noventa y ocho pesos cincuenta centavos y a devolver a Román, mil quinientos pesos, a saber; cuatrocientos, en los meses de diciembre de los años de 1898, 1899 y 1900, y los trescientos restantes en 1901, *quedando interinamente las*

*propiedades de cada uno y garantía de los referidos créditos,* bien entendido, que si uno u otro se arrepintiese del convenio ínterin se otorgaban las escrituras, el que así lo hiciere pagaría al otro la suma de mil pesos para indemnizarle los daños y perjuicios que le causara.

3°. Que en juicio de conciliación celebrado ante el Juez Municipal de Utuado en 15 de julio de 1899, Juan Antonio Santiago, demandó a Juan Bautista Román para que éste se aviniera a otorgar a favor de aquél escritura de permuta de unas tierras, según convenio privado que tenían celebrado, y ambas partes convinieron en que por razón de la crisis monetaria entonces existente, la escritura de permuta se otorgaría en el mes de diciembre del año expresado, pudiendo Santiago reconocer sobre la finca permutada a Román los seis mil pesos que se estaban debiendo a Tomás Jordán, de los seis mil setecientos noventa y cinco pesos 50 centavos a que se refería dicho convenio privado, a pagar a razón de mil quinientos pesos en los meses de diciembre de los años 1899 y subsiguientes  *  ·*  *  en virtud de lo cuál, al otorgarse la escritura no quedaría obligado Román a pagarle cantidad alguna a Jordán, sino a la persona que tuviera el crédito que con garantía de la finca reconocería el Santiago.

4°. Que en juicio verbal seguido ante la corte municipal de Utuado por Tomás Negrón contra Bautista Román, fué embargada como de la propiedad de éste una finca que según la anotación de dicho embargo en el registro de la propiedad, es la misma que hubo Román por escritura de 12 de abril de 1880; y habiendo presentado Juan Antonio Santiago demanda de tercería reclamando la propiedad de dicha finca a virtud del contrato de permuta celebrado con Román, recayó sentencia en 10 de enero de 1902 declarando con lugar la demanda y ordenando se levantara el embargo que la originó.

5°. Que en juicio seguido ante la misma corte municipal de Utuado por Manuel Jordán Correa contra Juan Antonio Santiago en cobro de dinero, fué condenado Santiago a pagar a Jordán Correa, la suma de cuatrocientos cincuenta dollars

con las costas del pleito, y para ejecución de esa sentencia fué embargada como de la propiedad de Santiago la finca de 20 cuerdas que se describe en la demanda, sin que de tal embargo se tomara anotación preventiva en el registro de la propiedad *por no aparecer registrada dicha finca a favor del demandado ni de ninguna otra persona;* y habiéndose anunciado su venta en pública subasta, fué adjudicada en 3 de octubre de 1905 a Jordán Correa, otorgándose a favor de éste por el márshal de la expresada corte municipal la correspondiente escritura de venta judicial con fecha 3 de noviembre siguiente.

6º. Que en otro juicio seguido ante la corte municipal de Utuado por Agustín Viruet contra Juan Bautista Román en cobro de quinientos dollars, fué embargada a Román la finca adquirida por escritura de 12 de abril de 1880, cuyo embargo fué anotado en el registro; y habiendo establecido Jordán Correa demanda de tercería contra Viruet y Román en reclamación de la propiedad de las 20 cuerdas que le habían sido adjudicadas en el pleito seguido contra Juan Antonio Santiago, fué declarada con lugar la tercería por veredicto del jurado de 6 de noviembre de 1905.

7º. Que para ejecutar sentencia que pronunció la Corte de Distrito de Arecibo a 31 de enero del año 1908, en pleito seguido por Federico A. Gómez Valencia contra Juan Bautista Román condenando a éste al pago de seiscientos dollars con intereses legales y costas del juicio, se sacó a pública subasta, por el márshal de dicha corte, la finca de veinte y nueve cuerdas con cuadro y medio de terreno, ya descrita en la demanda y que había sido embargada para asegurar la efectividad de la sentencia que se pronunciara, embargo que también fué anotado en el registro; habiéndose adjudicado aquélla en 9 de diciembre de 1908 al mejor postor, Federico A. Gómez, por la suma ofrecida de seiscientos dollars, y otorgádosele en 22 de enero de 1909 por el márshal expresado escritura de venta, que fué inscrita en el Registro de la Propiedad de Arecibo a 15 de abril del mismo año.

8º. Que en el Registro de la Propiedad de Arecibo se tomó

anotación en 9 de diciembre de 1908 del aviso de la demanda interpuesta por Manuel Jordán Correa, para obtener que se declare de su exclusiva propiedad la finca de 20 cuerdas descrita en la demanda, como parte de la de 29 cuerdas con cuadro y medio de terreno, y que se cancele el embargo trabado sobre la totalidad de la finca en virtud de demanda interpuesta por Gómez Valencia contra Juan Bautista Román, habiéndose presentado dicho aviso en el registro, en la mañana del día anterior.

9°. Que al declarar en el juicio Juan Bautista Román, como testigo del demandado Federico A. Gómez, manifestó que permutó tres fincas de treinta, cuarenta y veinte y nueve y media cuerdas respectivamente, sin que tuviera títulos de las dos primeras y sí de la tercera, por una de Juan Antonio Santiago, no habiéndose otorgado más documento de la permuta que uno privado, el que no llegó a reducirse a escritura pública, porque Santiago le debía setecientos pesos.

Terminada la vista del caso, la corte emitió opinión y pronunció sentencia que copiadas literalmente, dicen así:

''Opinión. En este juicio no se ha identificado la finca reclamada con la que es objeto de reclamación, pero, aunque se hubiera identificado, tampoco podría fallarse el caso a favor del demandante, puesto que su derecho alegado, parte del derecho de dominio que asegura tuvo en la finca Juan Antonio Santiago, por permuta con Juan Bautista Román, y estudiado el documento privado de dicha permuta, se vé, que si bien hubo entrega material de varias fincas permutadas, se establecieron ciertas condiciones de pago y se pactó que mientras no se cumpliesen permanecía el dominio en los dueños permutantes, que no otra interpretación puede darse 'a las palabras del contrato 'quedando interinamente las propiedades de cada uno.'

''En su consecuencia se dicta hoy sentencia conforme a esta opinión. Arecibo, febrero 3 de 1910. (Firmado) Ramón Quiñones, Juez.''

''Sentencia. En este pleito sobre tercería sobre bienes inmuebles, cuya vista tuvo lugar el día 10 de diciembre de 1909, comparecieron los abogados D. J. E. Martínez Quintero, en representación del demandante, y Don Antonio Suliveres, en representación del demandado Federico A. Gómez, encontrándose en rebeldía el otro deman-

dado Juan Bautista Román. Fué oída toda la prueba propuesta por ambas partes y se concedió a los letrados el tiempo necesario para presentar, como han presentado, extensas alegaciones por escrito. Apreciadas en su conjunto las pruebas y las alegaciones de derecho de los letrados, la corte

"FALLA:

"Que los hechos y el derecho están a favor de los demandados y en contra del demandante; y por tanto se declara sin lugar la demanda. Arecibo, febrero 3 de 1910. (Firmado) Ramón Quiñones, Juez."

Contra esa sentencia interpuso Manuel Jordán Correa recurso de apelación para ante esta Corte Suprema.

Admitimos y adoptamos como base para la decisión del recurso, que la finca de veinte cuerdas, cuya propiedad reclama el demandante en tercería de dominio, forma parte según alega en su demanda, de la de veinte y nueve cuerdas con cuadro y medio de terreno, inscrita primeramente en el Registro de la Propiedad de Arecibo a favor de Juan Bautista Román y después a favor de Federico A. Gómez; pero no podemos venir a la conclusión de que el tercerista Manuel Jordán Correa deba reputarse dueño de dicha finca en relación con el demandado Federico A. Gómez.

Ciertamente que respecto de Juan Bautista Román, y Tomás Negrón, Juan Antonio Santiago era dueño de la finca de veinte cuerdas, porque perteneciendo a Juan Bautista Román como parte de otra de mayor cabida, fué ésta permutada con dos más por otra de Santiago, mediante convenio privado que ambos tuvieron en 2 de octubre de 1898; porque en acto de conciliación celebrado en 15 de julio del año 1899, Juan Bautista Román y Juan Antonio Santiago se obligaron a otorgarse la escritura de permuta de las fincas permutadas; y porque en juicio de tercería de dominio seguido por Juan Antonio Santiago ante la corte municipal de Utuado contra Tomás Negrón y Juan Bautista Román, se declaró por sentencia de 10 de enero de 1902, que la finca de 29 cuerdas con

cuadro y medio de terreno era de la propiedad del tercerista Juan Antonio Santiago.

Ante esos elementos probatorios, para Juan Bautista Román y Tomás Negrón, Juan Antonio Santiago era dueño de la finca de 29 cuerdas con cuadro y medio de terreno, pues Román y Santiago fueron las partes contratantes de la permuta, ambos y Negrón fueron partes en el juicio de tercería de dominio promovido por Santiago sobre la finca expresada, y a los tres alcanza la autoridad de cosa juzgada, que reviste la sentencia que declaró a favor de Santiago el dominio reclamado, sin que ni Román ni Negrón puedan invocar derechos de terceros.

Pero como el contrato de permuta no se inscribió ni pudo inscribirse en el Registro de la Propiedad de Arecibo, por no haberse reducido a escritura pública, ni tampoco se verificó la inscripción en dicho registro de la sentencia declaratoria del dominio a favor de Juan Antonio Santiago, siempre quedó en el registro Juan Bautista Román con el carácter de dueño de la finca de que se trata y con capacidad para contratar sobre ella.

Poco importa que Manuel Jordán Correa, en juicio contra Juan Antonio Santiago en cobro de dinero, obtuviera la adjudicación de veinte cuerdas de la finca de veinte y nueve con cuadro y medio de terreno, y que se le otorgara por el márshal de la corte municipal de Utuado escritura traslativa del dominio en tres de noviembre de 1905; pues si según el registro no era dueño de ella Santiago sino Román, el márshal en representación de aquél no podía otorgar a Jordán Correa semejante título, sin quedar éste sujeto a las contingencias de un pleito como el presente en que ha venido a discutirse su eficacia legal respecto de un tercero como·Federico A. Gómez.

El título de propiedad otorgado a Manuel Jordán Correa en 3 de noviembre de 1905 produce efectos legales respecto de Agustín Viruet y Juan Bautista Román contra quienes siguió Jordán Correa juicio de tercería de dominio que fué declarada con lugar; pero no puede perjudicar a terceros,

como Gómez que no intervino en dicho juicio y para quien Juan Bautista Román era y continuó siendo dueño de la finca de 29 cuerdas con cuadro y medio de terreno, según el Registro de la Propiedad de Arecibo.

A ese registro de la propiedad, y no a las cortes municipales, o a las cortes de distrito, o a los márshals de esas cortes, o a los periódicos de mayor o menor circulación, o a los que alegaran derechos de dominio, era donde tenía que acudir Gómez para averiguar y comprobar cuál fuera el dueño de la finca que trataba de subastar para cobrar la cantidad que le adeudaba Román.

La finca aparecía registrada a favor de Juan Bautista Román, y de ahí que, al otorgarse a Gómez en 22 de enero de 1909 por el márshal de la Corte de Distrito de Arecibo escritura de venta de la misma, adquirió de quien en el registro aparecía como dueño, o sea de Juan Bautista Román. Esa venta no está sujeta a rescisión o resolución con arreglo al artículo 36 de la Ley Hipotecaria.

Y no se diga que habiéndose anotado en el registro el aviso de la demanda, cuyo aviso fué presentado en 8 de diciembre de 1908, o sea el día anterior al de la subasta, ha incurrido Gómez en la primera de las excepciones del artículo 37 de la ley citada, pues semejante aviso no puede producir mayores efectos que los de la anotación preventiva de una demanda, y tal anotación no impide la enajenación de los bienes anotados con arreglo al artículo 71, sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación.

La anotación del aviso no prueba que sean ciertos los hechos alegados en la demanda, sino que es una realidad la interposición de ella, y por tanto no puede decirse que Gómez adquiriera con conocimiento de hechos ciertos y positivos que constaban explícitamente en el registro, sino que adquirió con conocimiento del hecho de que había demanda de tercería de dominio interpuesta por Manuel Jordán Correa contra la finca que adquiriera, tercería que en definitiva sería o nó

declarada con lugar por el mérito de las resultancias del juicio, pero nunca en virtud del aviso de la demanda anotada en el registro de la propiedad.

La anotación en el registro del aviso de una demanda interpuesta con relación al título o derecho de posesión de una propiedad inmueble, no puede producir más efecto que el que le atribuye el artículo 91 del Código de Enjuiciamiento Civil, o sea el de considerarse que el comprador o la persona que adquiriera un gravamen sobre la propiedad litigiosa, tiene conocimiento para los efectos legales de la acción pendiente entre las partes designadas en el aviso.

Dicho aviso es equiparable en su esencia a la anotación preventiva de una demanda sobre propiedad de bien inmueble o derecho real, a que se refiere el número 1°. del artículo 42 de la Ley Hipotecaria, y por tanto ambas diligencias tienen que producir idénticos resultados.

La anotación preventiva de una demanda es una medida interina que no altera la naturaleza de las obligaciones y de los derechos que han de resolverse en el fallo definitivo del pleito, y sus efectos se limitan a asegurar las consecuencias del juicio sin lastimar los derechos que sobre la propiedad reclamada puedan tener terceras personas, según jurisprudencia establecida por el Tribunal Supremo de España, en sentencias de 17 de junio de 1875 y 8 de julio de 1876. Lo propio tiene que suceder con la anotación en el registro del aviso de una demanda de propiedad.

Haciendo aplicación de la doctrina que dejamos expuesta al tercerista Manuel Jordán Correa, es incuestionable que el derecho de propiedad que reclama en el presente juicio, no puede ser alterado en su favor por la anotación en el registro del aviso de la demanda, y que tampoco esa anotación puede lastimar derechos ya adquiridos por terceras personas o que éstas adquirieran después de la anotación del aviso, como sucede respecto del demandado Federico A. Gómez, el cual en vista del aviso anotado en el registro no puede menos que sujetarse a las consecuencias del juicio; pero ello no quiere

decir que el juicio con relación a Federico A. Gómez deba tener distinto resultado, según que se anota o nó el aviso de la demanda. El resultado tiene que ser el mismo haya o nó aviso. La única diferencia que habrá consiste en que si hay aviso, Federico A. Gómez tendrá que soportar las consecuencias del fallo, lo que no sucederá si ha faltado el aviso; pero repetimos que el fallo tiene que ser idéntico haya o nó aviso.

En el caso presente, según los hechos que resultan del juicio y los preceptos legales aplicables al caso, procede declarar sin lugar la demanda de tercería y a esa misma resolución es forzoso llegar habiéndose anotado en el registro el aviso de la demanda; y el caso ha de decidirse con arreglo a nuestro derecho local y jurisprudencia interpretativa del mismo, sin acudir a resoluciones de tribunales americanos, cuyo alcance es innecesario considerar y discutir.

Ya hemos dicho que al Registro de la Propiedad de Arecibo era donde tenía que acudir Gómez para averiguar y comprobar cuál fuera el dueño de la finca que compró para cobrarse de la cantidad que le adeudara Román. Los embargos anotados en el registro a instancia de Tomás Negrón y Agustín Viruet revelaban que la finca que remató Gómez era de la propiedad de Juan Bautista Román, contra quienes se siguieron los juicios en que se decretaron tales embargos, y Gómez tenía que aceptar las consecuencias de los mismos, sin que precepto alguno legal del Código Civil y de la Ley Hipotecaria le impusiera la obligación de investigar cual hubiera sido el resultado de dichos juicios.

Meras presunciones no pueden despojar al demandado Federico A. Gómez del carácter de tercero que tiene con relación a actos y contratos en que no intervino, y en corroboración de lo que afirmamos citamos la sentencia del Tribunal Supremo de España, de 23 de marzo de 1906, por la sabia doctrina que contiene.

Establece esa sentencia que la doctrina consignada en otras de dicho Tribunal Supremo, a tenor de las que no puede alegar su cualidad de tercero para oponerse a la nulidad de

un derecho, aquel que tiene perfecto conocimiento de las condiciones con que hubo de adquirirlo, aun cuando éstas no resultasen del registro, exige y requiere por su naturaleza, en relación con el espíritu y finalidad del artículo 34 de la Ley Hipotecaria, que semejante conocimiento se revele evidentemente, ya por hechos que tienen que herir forzosamente los sentidos, cual acontece, por ejemplo, respecto de determinadas servidumbres aparentes, ya por actos que haya realizado el mismo supuesto tercero, pues sería disconforme con aquel terminante precepto *la admisión de presunciones más o menos lógicas y racionales,* contradictorias en realidad de su esencial fundamento y alcance, por lo que el mismo Supremo Tribunal ha estimado y declarado en sentencia de 20 de diciembre de 1904, que *a los contratantes no se les puede obligar a hacer un estudio jurídico acerca de las condiciones de los bienes inscritos* y que las causas de la rescisión para que perjudiquen en este caso a tercero, ya emanen de la ley, ya de la voluntad de las partes, deben constar en el registro.

Además, según la ley sobre procedimientos en los casos de tercería, aprobada en 12 de marzo de 1908, la orden de ejecución para el trámite de una subasta sólo podrá suspenderse mediante interdicto prohibitorio, que no fué solicitado en el presente caso; y por tanto, así el acto de la subasta, como el otorgamiento de la escritura de adjudicación fueron legales, sin que el conocimiento que por medio de la demanda o de su anotación en el registro pudiera tener Gómez del hecho alegado por Jordán Correa, relativo a ser dueño de la finca de veinte cuerdas sea por sí solo bastante para suponer mala fe en el adjudicatario Federico A. Gómez, cuando el registro estaba revelando que la finca adjudicada era de la propiedad de Juan Bautista Román, de quien la adquirió Gómez.

La escritura de venta a favor de Gómez ha sido inscrita en el registro de la propiedad, y como la inscripción se refiere a un contrato que a favor de aquél se otorgó por persona que en el registro aparece con derecho para ello, o sea por Juan

Bautista Román, en cuyo nombre actuaba el márshal, no puede menos que surtir todos sus efectos legales.

Finalmente, según el artículo 2º. de la Ley Hipotecaria, deben inscribirse en el registro de la propiedad los títulos traslativos o declarativos del dominio de los inmuebles o de los derechos reales impuestos sobre los mismos, y según el artículo 389 de la misma ley, desde que comenzó ésta a regir, no puede admitirse en los juzgados o tribunales ordinarios y especiales, en los consejos y en las oficinas del Gobierno, ningún documento o escritura de que no se haya tomado razón en el registro por el cual se constituyeren, transmitieren, reconocieren, modificaren o extinguieren derechos sujetos a inscripción, según la misma ley, si el objeto de la presentación fuese hacer efectivo en perjuicio de tercero el derecho que debió ser inscrito. La escritura de dominio a favor de Jordán no puede surtir efectos legales contra Federico A. Gómez, que tiene la suya inscrita en el registro de la propiedad. Y no son aplicables a Jordán las excepciones contenidas en los apartados 2º. y 3º. del artículo 389 que acabamos de citar.

En sentencia de 28 de abril de 1870 establece el Tribunal Supremo de España, que carece de apoyo legal la tercería de dominio fundada en un título que no está inscrito en el registro de la propiedad, sin cuyo requisito no puede perjudicar a tercero.

Por las razones expuestas se sostiene la sentencia recurrida y en su virtud debe confirmarse.