ROSARIO CINTRÓN VIUDA DE CAPÓ, demandante y apelada, *v.* A. HARTMAN & COMPANY, demandada y apelante.

No. 5133.—*Sometido:* Mayo 9, 1930.—*Resuelto:* Marzo 10, 1932.

*Tous Soto & Zapater,* abogados de la apelante; *José A. Poventud, Alberto S. Poventud, F. Parra Capó y E. Capó,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Versa este recurso sobre la facultad que tienen las cortes para corregir sus propios fallos y sobre si la Corte de Distrito de Guayama hizo buen uso o no de su facultad para corregir como corrigió la sentencia que anteriormente dictara.

Parece conveniente decir que la parte apelada solicita la desestimación del recurso por varios motivos que argumenta ampliamente· en su alegato. Quizá tenga razón, pero como

según la opinión que del caso hemos formado, debe confirmarse la resolución apelada, preferimos basar nuestra decisión en los méritos de la propia cuestión planteada en y resuelta por la corte de distrito.

En el año de 1918 doña Rosario Cintrón demandó ante la Corte de Distrito de Guayama a la Sociedad A. Hartman & Co., sobre cumplimiento de contrato. En la demanda se describieron tres propiedades, una de 288 cuerdas (Hacienda Caimital), otra de 42 cuerdas y otra de 10 como pertenecientes a la demandante, y otras tres propiedades de 246 cuerdas (Hacienda Olimpo), y 80 y 25 cuerdas, como pertenecientes a los demandados.

Esas mismas fincas se describen en el contrato, base del pleito, celebrado por escritura pública otorgada en 1917, y en el que se convino que colindando entre sí todas las dichas fincas y existiendo diferencias en cuanto a las colindancias, se debía proceder a la práctica de un deslinde y mensura, midiéndolas como un solo cuerpo y como fincas separadas, para cuya operación se designó de común acuerdo al perito don Celso Caballero. Si resultare algún sobrante, se repartiría proporcionalmente entre ambas partes.

Se alegó además en la demanda que la mensura convenida fué practicada con el siguiente resultado:

"DIFERENCIA DE CABIDA EN LAS FINCAS DE LA DEMANDANTE"

|  | "Registro de la Propiedad | "Mensura |
| --- | --- | --- |
| "Finca No. 1 | 288 cuerdas | 293. 90 cuerdas |
| Finca No. 2 | 42 cuerdas | 37. 46 cuerdas |
| Finca No. 3 | 10 cuerdas | 12. 75 cuerdas |
| Caminos en las Fincas |  | 2. 00 cuerdas |
| Total | 340 cuerdas | 346. 11 cuerdas |

"*     *     *     *     *     *     *

"Diferencia de Cabida en las Fincas de la Demandada

| | "Registro de la Propiedad | "Mensura |
|---|---|---|
| "Finca letra 'A' | 246 cuerdas | 259 cuerdas |
| Finca letra 'B' | 80 cuerdas | 80 cuerdas |
| Finca letra 'C' | 25 cuerdas | 23. 96 cuerdas |
| Total | 351 cuerdas | 362. 96 cuerdas" |

Y alegándose por último que la demandada contra lo convenido se negaba a reconocer a la demandante como dueña de las tres fincas descritas y a distribuir el exceso, se pidió una sentencia haciendo constar:

"1. Que la demandante es dueña de las fincas descritas en la alegación 2ª de la demanda, con la sola variación de que la descrita con el número UNO consta sólo de doscientas ochenta y ocho cuerdas en vez de trescientas cuerdas.

"2. Que a la demandante pertenece en dominio en las diez y ocho cuerdas siete céntimos de exceso una parte en proporción a la cabida de sus fincas, y las de la demandada, y

"3. Que la demandada debe pagar a la demandante todas las costas, gastos y honorarios de los abogados de dicha demandante, que se causen en el presente litigio."

Contestaron los demandados, aceptando unos hechos y negando otros y contrademandando además a los demandantes, pidiendo un fallo con los siguientes pronunciamientos:

". . . declarando nulo y sin ningún valor ni efecto el contrato de deslinde objeto de este litigio, nulas y sin ningún valor ni efecto las inscripciones practicadas a nombre de la demandante en el Registro de la Propiedad, respecto de la finca de cuarenta y dos cuerdas descritas bajo el No. 2 de la alegación 3ª de la demanda, así como también respecto de las treinta y ocho cuerdas en que aparece aumentada la cabida de la finca descrita bajo el No. 1 de la alegación 2ª de la demanda, declarando que dichas cuarenta y dos cuerdas y dichas treinta y ocho cuerdas son de la exclusiva propiedad de la demandada, declarando por último, sin lugar la demanda de la ac-

tora, condenándola, además, al pago de todas las costas, y gastos y honorarios de abogado de dicha demandada, . . .''

Fué el pleito a juicio practicándose una larga prueba testifical y documental, présentándose planos varios e informes periciales. Finalmente la corte de distrito lo decidió por sentencia que contiene los siguientes pronunciamientos:

''(a) Que el contrato efectuado entre las partes es válido y debe cumplirse de acuerdo con el contenido del mismo;

''(b) Que las partes demandantes y demandada, son dueñas, respectivamente, de las fincas que justifican sus títulos, teniendo las fincas de la demandante una cabida de trescientas cuarenta cuerdas, y las de la demandada una cabida de trescientas cincuenta y una cuerdas, que dan un total, según sus títulos, de seiscientas noventa y una cuerdas;

''(c) Que practicada la mensura de las fincas, ésta arroja en su totalidad una cabida de setecientas nueve cuerdas con 7 c/.;

''(d) Que de acuerdo con dicho contrato, debe condenar y condena a la demandada a repartir con la demandante el exceso de diez y ocho cuerdas con siete centavos, en partes proporcionales a la cabida de sus fincas, según sus títulos;

''(e) Que no habiéndose justificado debidamente los hechos alegados en la contrademanda, la Corte la desestima, sin perjuicio de los derechos de la parte de alegar sus defensas en cualquier otra acción; y

''(f) Condena a la demandada a pagar a la demandante las costas y honorarios de abogado.''

La sentencia se basa en una larga opinión, uno de cuyos primeros párrafos dice, en parte, así:

''La demandante titula su acción como una de cumplimiento de contrato. Pero, si examinamos las alegaciones veremos que trata de obtener de la Corte un pronunciamiento sobre el dominio de las fincas en controversia y reclama la entrega de ciertos pedazos de terreno.''

Apelada la sentencia para ante este Tribunal Supremo, fué confirmada (33 D.P.R. 1070–1073). Uno de los Por cuantos de la sentencia de esta Corte Suprema, dice:

''Por cuanto celebrada la vista del recurso, oyéndose a los abo-

gados de ambas partes, y examinados los autos y los alegatos, después de una amplia discusión en el seno de la Corte, la mayoría opina que no se han cometido los diez primeros errores señalados, ya que la demanda es suficiente, no existe indebida acumulación de acciones y la prueba demuestra que el convenio celebrado por las partes el 8 de septiembre de 1917 tendió a zanjar y zanjó dificultades que de antaño existían y en él intervinieron las partes con pleno conocimiento de los antecedentes y al hacerse la mensura en la forma acordada alcanzaron las tierras a cubrir todos los títulos sobrando aún algunas cuerdas, sin que pueda sostenerse de manera enfática y segura que la corte sentenciadora errara al dejar de concluir como pretende la apelante que los títulos de la demandante a la porción de cuarenta y dos cuerdas y a la mayor extensión de la Haciendá 'Caimital' son ineficaces por tratarse de las mismas ochenta cuerdas vendidas anteriormente por el causante de la demandante al causante de la demandada.''

No conforme la demandada, apeló para ante la Corte de Circuito de Boston, que confirmó el fallo de este tribunal (12 Fed. (2d.) 649–652). En su opinión la Corte de Circuito dijo, en resumen, que las cortes de distrito de Guayama y Suprema de Puerto Rico consideraron el procedimiento como una acción ''to try title'', siendo la cuestión resuelta el título y derecho a las 42 y 38 cuerdas a favor de la demandante, y refiriéndose a cierta reserva señalada como error por la apelante al desestimarse por la corte de distrito su reconvención, expresó que parecía claro que ambos tribunales insulares juzgaron y determinaron el título a las ochenta cuerdas en favor de la demandante, habiéndose basado el fallo en la validez de los títulos, siendo el fundamento de la acción una cuestión de hecho sobre el título a dichas tierras de las que se encontraban entonces aparentemente en posesión los apelantes.

No se conformó la parte demandada y apelante. Solicitó de la propia Corte de Circuito que reconsiderara su sentencia basándose en que sus conclusiones habían ido más allá de las cuestiones envueltas en el litigio y resueltas por las cortes insulares, al decidir la relativa a los títulos de pro-

piedad, y sugiriendo que el fallo que procedía era uno devolviendo el pleito para determinar la contrademanda de la apelante o revocando la sentencia de esta Corte Suprema por no estar sostenida por las alegaciones, dejando libre a la demandante para promover un nuevo pleito sobre reivindicación, y la corte se negó a reconsiderar su sentencia.

Devuelto el caso a esta Corte Suprema, se remitió el mandato a la de Distrito de Guayama y fué entonces que se pidió la corrección que motiva este nuevo recurso de apelación. La corrección fué decretada en los siguientes términos:

"(B).—Que por el Secretario de esta Corte se supla la omisión en la sentencia de este Tribunal, dictada en este caso en septiembre 27, 1921, al no describirse las tres fincas, con 340 cuerdas, que fueron reconocidas a doña Rosario Cintrón Sánchez, mediante inserción de la descripción de dichas tres fincas, en la referida sentencia tal como se describen dichas fincas en esta resolución debiendo el referido Secretario transcribir de nuevo dicha sentencia, *nunc pro tunc*, en el libro corriente de Sentencias de esta Corte; y

"(C).—Que una vez corregida dicha sentencia de esta Corte de septiembre 27, 1921, se libre al Márshal de esta Corte auto posesorio u orden de ejecución para el cumplimiento de dicha sentencia, como la misma ha sido confirmada por las expresadas cortes superiores, debiendo ponerse en posesión a los promoventes de las 80 cuerdas, reconocidas a favor de su antecesora doña Rosario Cintrón Sánchez, o sea, de la parcela de 42 cuerdas y de la otra finca mayor de 288 cuerdas más o menos, llamada 'Caimital', y descritas ambas en esta resolución, después de segregarse de esta última las 248 cuerdas, más o menos, que fueron vendidas por doña Rosario Cintrón Sánchez a Marcelo J. Oben, mediante escritura de 31 de diciembre de 1923, otorgada en Ponce, ante el Notario Francisco Parra Capó, y cuya segregación en dicha escritura se describe así:"

Bastaría a nuestro juicio la anterior exposición, para confirmar sin más razonamientos la resolución apelada, pero la parte apelante ha presentado un alegato señalando la comisión de diez y siete errores y parece conveniente consignar—siquiera sea rápidamente—por qué consideramos que no se han cometido.

Los ocho primeros pueden estudiarse conjuntamente. Por ellos se sostiene que la corte erró al declarar que hubo omisión en la sentencia y que por ésta se resolvió que las tres fincas pertenecían a la demandante; que se trataba de un error clerical; que las fincas no se describieron en la sentencia por inadvertencia; que la corte carecía de jurisdicción después de transcurridos siete años, y después de apelada y confirmada en apelación la sentencia; que erró al sostener que la sentencia declaraba con lugar la demanda sin limitación alguna, al estimar que la fraseología usual del mandato de la Corte de Circuito de Apelaciones la autorizaba a corregir la supuesta omisión y al no estimar que de ser necesaria la descripción de las fincas, la omisión producía la nulidad de la sentencia o por lo menos hacía imposible su ejecución.

De acuerdo con el artículo 7, No. 8, del Código de Enjuiciamiento Civil, toda corte tiene poder para inspeccionar y corregir sus providencias y órdenes con el fin de ajustarlas a la ley y a la justicia.

La jurisprudencia es abundantísima sobre el particular. En el caso de *Marvin & Jones, Inc.* v. *Torres et al.,* 19 D. P.R. 48, citando varios casos de las cortes continentales, se decidió que: "Las cortes de Puerto Rico pueden enmendar sus sentencias y decretos en cualquier forma dentro del término en que fueron dictados, y después del término sólo cuando la solicitud se haga dentro del término y continúe tramitándose fuera de él, o cuando se trate de errores clericales."

Y esos errores clericales pueden corregirse aun después de confirmado el fallo en apelación. *Fallon* v. *Britton,* 84 Cal. 514; *Lawton* v. *Rodríguez,* 41 D.P.R. 447.

La descripción de las fincas que se ha incluído en la sentencia enmendada *nunc pro tunc* consta de modo inequívoco no sólo en una sino en varias partes del récord. A las fincas se refirió la sentencia primitiva. La corrección hecha consiste solamente en incluir en la sentencia una descripción

completa de acuerdo con las constancias del récord. La omisión puede considerarse como un error clerical. Si el secretario hubiera sido cuidadoso, hubiera descrito en forma completa las fincas al registrar la sentencia basándose en la opinión emitida por el juez.

El caso de *Rivera* v. *El Pueblo,* 16 D.P.R. 769, no es aplicable. Allí no se pidió la subsanación del error. Aquí la parte apelante no invocó a su favor el error y la parte apelada en tiempo aun pidió su corrección y la obtuvo. Negar la enmienda en este caso hubiera sido en verdad rehusar ajustar la sentencia a la ley y a la justicia.

El tiempo transcurrido no importa. Durante todo él estuvo el caso en tramitación puesta la atención de las partes en cuestiones fundamentales. Además, encuéntranse casos en la jurisprudencia en que las enmiendas se han decretado habiendo transcurrido un tiempo más largo que en éste. *Frink* v. *Frink,* 43 N.H. 508, 80 Am. Dec. 189.

En los señalamientos 9, 10, 11 y 14 se sostiene que la corte erró porque carecía de jurisdicción para ordenar que se diera posesión a la demandante de las fincas de 43 y 38 cuerdas y para conceder a la demandante un remedio que no solicitó en su demanda, y porque en caso de que tuviera jurisdicción abusó de ella al actuar en la forma en que lo hizo.

Creemos que la corte pudo enmendar también su sentencia incluyendo en ella la orden de posesión. Quizá no hubiera sido necesario, ya que el artículo 64 del Código de Enjuiciamiento Civil expresamente dispone:

"Artículo 64. En un pleito promovido por una persona que no tuviere la posesión de una propiedad inmueble para resolver la oposición que en contrario se hiciere sobre el dominio u otro derecho que sostuviere sobre aquélla, la persona que tal oposición hiciere y las que se hallaren en posesión, podrán asociarse como demandados; y si el fallo fuese a favor del demandante, podrá éste obtener un mandamiento para la posesión de la finca contra el demandado vencido en el pleito."

Pretender que aquí no quedó resuelto quién era el dueño de las fincas de acuerdo con los títulos que sirvieron de base al convenio y a la mensura, es cerrar los ojos a la evidencia. Mal o bien, justa o injustamente la cuestión fué definitivamente decidida por tres cortes y esa decisión no es académica. Se dictó para tener realidad en la práctica.

Insiste el apelante en el duodécimo error en que la orden de la corte es errónea porque no describe el remanente de la finca Caimital. Parece conveniente transcribir la parte que sigue de la contestación que al error da la apelada en su alegato:

". . . la primera sentencia en este pleito principal, dictada por la Corte de Distrito de Guayama en septiembre 27, 1921, entre otros extremos, reconoció a la demandante Rosario Cintrón Sánchez un área de 340 cuerdas, esto es, las 288 (Caimital), 42 y 10 cuerdas, (T. de A., anterior, pp. 51–68; Rec., C. C. A., pp. 31–42), únicas tres fincas que la demandante reclamaba y describía en su demanda (T. de A., anterior, pp. 2–3, 9 top); y asimismo se declaró que el agrimensor Caballero, nombrado por ambas partes en el pleito para levantar el plano y hacer las mensuras correspondientes, encontró sobre el perímetro las seis (6) fincas de ambas partes y terreno suficiente para cubrir sus respectivas cabidas, resultando también un sobrante (T. de A., anterior, pp. 51–68; Rec., C. C. A., pp. 31–42).

"En apelación por A. Hartman & Co., las Honorables Corte Suprema de Puerto Rico y de Circuito de Apelaciones, limitaron la contienda 'a la porción de 42 cuerdas y a la mayor extensión (38 cuerdas) de la Hacienda Caimital,' declarándose que las mismas, o sea un total de 80 cuerdas, pertenecían a la demandante Sra. Cintrón Sánchez (*Cintrón. v. Hartman & Co.*, 33 D.P.R. 1070–1072; *Hartman & Co. v. Sánchez*, 12 Fed. (2nd) 649, 652).

"En la opinión dictada por la Corte de Boston se identifican las fincas de la demandante por referencia a sus títulos, al plano de Caballero y a la demanda, pues dicha superior opinión, en parte, dice:

" '. . . The record titles of the parties, as recited in. this contract, are in the plaintiff: No. 1, the Caimital Plantation of 300 acres, reduced by later agreement to 288 acres; No. 2, 42 acres; No. 3, 10 acres, a total of 340 acres . . . Caballero proceeded under this contract . . . The surveyor made the usual chart of survey . . .

and apportioned the excess in a manner not now in dispute . . . Thereupon the plaintiff brought in the District Court of Guayama a suit . . . ; and in the complaint set up the proceedings just sketched, and prayed for a judgment to the effect, that the plaintiff was the owner of the 340 acres indicated in the record titles of parcels 1, 2 and 3 . . . ' (T. de A. pp. 39, 40; *A. Hartman & Co.* v. *Sánchez*, 12 Fed. (2nd) 649–652.)

"Mayor identificación de las fincas de la demandante demostradas por sus títulos, por el plano de Caballero y por la demanda, no puede darse ni concebirse, pues una lectura de la opinión de dicha Corte Federal de Apelaciones no deja la más leve duda de que no hubo en Boston dificultad alguna en determinar e identificar las 340 cuerdas de la actora, integradas por sus tres propiedades descritas en la demanda de 288, 42 y 10 cuerdas.

"Se concluye fácilmente que el Márshal, al dar posesión a los herederos de la demandante, de los terrenos adjudicados en favor de ésta, según se ordena en la resolución apelada, no habrá de encontrar la más mínima dificultad de acuerdo con la descripción contenida en dicha resolución apelada.

"Según veremos por la jurisprudencia que se citará más adelante, el Márshal puede también, si lo encontrare necesario o conveniente, acudir al plano de Caballero y obtener la ayuda de vecinos y colindantes, lo cual, sin embargo, en vista de lo que antecede, no habrá de necesitarse.

"Pendiente los recursos relacionados, entablados por A. Hartman y Compañía, la demandante Sra. Cintrón viuda de Capó enajenó la parcela de 10 cuerdas, y también de la finca Caimital de 288 cuerdas, segregó y vendió a Don Marcelo Oben 248 cuerdas que se describieron detalladamente por límites y colindancias (T. de A., pp. 48, 50, 53), quedando, por tanto, a la demandante Sra. Cintrón viuda de Capó el remanente de dicha finca principal llamada Caimital, cuyo resto es precisamente la porción de 38 cuerdas, más o menos, reconocidas como pertenecientes a la actora en las varias sentencias referidas dictadas a su favor, y a cuya porción también se refiere el indicado plano de Caballero, que es parte de estos autos, al deslindar la parcela B-f 40.10.

"A propósito de esta segregación y venta de parte de la finca Caimital a Marcelo Oben, la apelante en su alegato, p. 110, reconoce que también ofreció en evidencia la demanda y la contestación en el caso de *Luce & Co.* v. *Rosario Cintrón viuda de Capó*, sobre *injunction* y otros extremos, y en dicha contestación se alegó que el expresado Oben actuó como *trustee* y para beneficio de Luce &

Co., compradora *pendente-lite* de Hartman & Co., y que también se obligó a comprar el resto de dicha finca Caimital (38 cuerdas, más o menos), tan pronto la demandante obtuviese su posesión (T. de A., pp. 87, 53; *Luce & Co.* v. *Cintrón*, 38 D.P.R. 536, bot.)

"Y como 'la realidad de las cosas debe prevalecer' (*Cabrera* v. *Aponte*, 29 D.P.R. 944 bot.) y quedando a la demandante por recuperar únicamente los predios reconocidos en su favor de 42 y 38 cuerdas, total 80, alegó los hechos en su moción para subsanar la omisión sobre la descripción de las fincas en la sentencia, tal como existían, es decir, consignando lo referente a la venta de la finca de 10 cuerdas, y a la segregación y venta de las 248 cuerdas del Caimital (T. de A., pp. 1–5), por lo que en la resolución apelada se ordenó, de acuerdo con los pronunciamientos de las sentencias confirmatorias relacionadas, la restitución o entrega a la demandante de la finca de 42 cuerdas y de la finca Caimital de 288 cuerdas, después de segregar de esta última las 248 cuerdas que fueron vendidas al Sr. Oben, según ya hemos visto (T. de A., pp. 42–34).

"La identificación, por tanto, del resto de la finca Caimital es perfecta, ya que, eliminando de la misma la porción segregada que se describe en la resolución inferior, el remanente de dicha finca Caimital, aun sin acudir al plano de Caballero ni a otros recursos que un Márshal puede siempre utilizar, podrá localizarse sin el menor obstáculo."

Por el décimoquinto error se sostiene que al solicitar la enmienda la propia demandante, reabrió el pleito. Basta enunciarlo para concluir que no existe.

El señalamiento 13 es como sigue:

"La Corte erró al no estimar que la sentencia en cuestión no era ni es susceptible de enmienda por ser nula por haber sido dictada sin jurisdicción y mediante fraude extrínseco perpetrado en los procedimientos para la obtención de la misma."

Todas las cuestiones que suscita la apelante al discutir este error quedaron resueltas en el pleito. Se dió validez al convenio. Se partió de la base de los títulos. Se tomó en consideración la mensura. Se aceptó la realidad de la existencia de todas las fincas sobre el terreno, quedando aún una fracción por repartir. Si se aceptara la teoría de la apelante, jamás terminarían los litigios.

La discusión de los errores 16 y 17 nos obliga a ampliar la narración de hechos que hicimos al principio.

Los demandados Hartman & Co., pendiente el litigio, anotada la demanda en el registro, vendieron a Luce & Co. Estos entablaron en la Corte de Distrito de Guayama un pleito de *injunction* iniciando de nuevo la contienda sobre el dominio de las tierras de que se trata. Se solicitó un mandamiento preliminar que fué negado. Se apeló a esta corte y la orden apelada quedó confirmada. Véase *Luce & Co., S. en C. v. Cintrón,* 38 D.P.R. 535.

Siendo ello así, la existencia de dicho pleito no pudo ni debió impedir los procedimientos en éste. En la opinión emitida por esta corte, se dijo:

"Hemos leído cuidadosamente la demanda y la contestación, hemos examinado la prueba que está formada principalmente por los autos del pleito anterior resuelto por tres cortes y hemos analizado los hechos a la luz de las opiniones emitidas y de las sentencias dictadas y a virtud de todo ello entendemos que ejercitó bien su juicio la corte de distrito al negarse a expedir la orden de *injunction pendente lite* solicitada.

"Desde 1906 esta Corte Suprema, por medio de su Juez Asociado Sr. Figueras, en el caso de *Pereira* v. *Villafaña,* 10 D.P.R. 11, 15, se expresó así:

" 'Los mandamientos de *injunction* no deben concederse sino con gran cautela y solamente en casos donde la razón y la necesidad son claros. La concesión precipitada e inconsiderada de mandamientos de *injunction* es peligrosa tanto para los intereses económicos del país, como para los derechos de las partes y los bien sentados precedentes de los tribunales.'

"Aparentemente el caso que ahora levanta Luce & Co., S. en C., fué juzgado y decidido en el pleito seguido por la viuda de Capó contra A. Hartman & Co., y como Luce & Co., S. en C., adquirieron con conocimiento de dicho pleito según se desprende de sus propias alegaciones, están obligados por el fallo dictado en el mismo.

"Las sentencias de los tribunales se pronuncian para cumplirse. Es cierto que en este nuevo pleito se alega el fraude, pero ello no es bastante para detener el curso de la justicia adjudicada. La prueba aportada y la hábil argumentación del letrado de la parte apelante pudieran ser bastantes para levantar dudas en la concien-

cia del juzgador, pero no en el grado suficiente para resolverse a dejar sin efecto aunque sea transitoriamente lo ya juzgado.''

█ Las siguientes citas de nuestra propia jurisprudencia que contiene el alegato de la parte apelada, son pertinentes:

''El comprador *pendente-lite* no es parte necesaria porque su vendedor continúa representando sus intereses, y está sujeto el comprador a una orden de posesión si la misma es dictada en virtud de sentencias en el pleito. Se presume que una persona que posee después de una acción que está anotada, deriva su título del demandado y debe desalojar el terreno si el demandante obtiene sentencia favorable.'' *Paniagua* v. *Corte de Distrito,* 34 D.P.R. 677.

''Adquirida propiedad litigiosa por otro pendiente apelación contra la sentencia, queda obligado el comprador como si hubiese sido parte en el litigio.'' *Lawton* v. *Rivera,* 38 D.P.R. 38, 47, 51.

''Anotada una demanda reclamando el dominio de una finca en el Registro de la Propiedad, aquellos que con posterioridad adquieren la finca no pueden alegar que desconocían la existencia del pleito y están obligados a estar y pasar por lo que resulte del pleito . . . al adquirir conocía por el Registro la existencia de este pleito y aceptó el riesgo del mismo . . . Si A establece una acción contra B para reivindicar una propiedad y presenta una notificación de estar pendiente de resolución otra acción establecida anteriormente, y durante la pendencia de la acción . . . C. compra a B la finca, y posteriormente se dicta sentencia contra B, dicha sentencia obliga a C y le impide entrar en el dominio de la propiedad comprada . . . '' *Jordán* v. *Gómez,* 18 D.P.R. 151, 154, bot., 155 mid.; *Oliver* v. *Serra,* 34 D.P.R. 950 bot.

''El texto inglés del artículo 91 del Código de Enjuiciamiento Civil no exige como condición para la anotación de la demanda o contestación en el Registro de la Propiedad, que el demandante y, en su caso, el demandado pidan se declare que lo que reclaman es suyo, sino que basta que la acción que se ejercita afecte el título o al derecho de posesión de una propiedad inmueble . . . '' *Manrique* v. *Registrador,* 23 D.P.R. 864, 866; *Alvarez* v. *Registrador,* 24 D. P. R. 427.

En los actuales momentos la cuestión es aun más clara, porque el pleito de *injunction* a que acabamos de referirnos fué resuelto en su fondo por la corte de distrito también

en contra de Luce & Co., S. en C. La sentencia fué apelada y quedó firme por haberse desestimado la apelación. *Luce & Co., S. en C. v. Cintrón,* 42 D.P.R. 610.

Los alegatos de ambas partes son amplísimos. El de la apelante tiene 122 páginas impresas y cien en maquinilla el de la apelada. No hemos podido seguirlos en todos sus detalles. Reducida a sus verdaderos límites, la cuestión envuelta es en verdad sencilla. La enmienda hace viable la ejecución de la sentencia de acuerdo con lo planteado y discutido abiertamente por las partes en el litigio y con lo resuelto de modo terminante por las cortes. La vaguedad que pudiera crear la reserva que contiene el pronunciamiento de la sentencia relativo a la reconvención, queda destruída por las palabras categóricas que la preceden, a saber: ''(e) Que no habiéndose justificado debidamente los hechos alegados en la contrademanda, la corte la desestima.'' La reserva fué algo sin eficacia alguna, especialmente después de lo decidido por esta Corte Suprema y por la de Circuito de Apelaciones.

*Debe confirmarse la resolución apelada.*

El Juez Asociado Señor Hutchison está conforme con la resolución.